A93A1547. DIXIELAND TRUCK BROKERS, INC. v. INTERNATIONAL INDEMNITY COMPANY.
(435 SE2d 520)

BIRDSONG, Presiding Judge.

This is an appeal from a grant of summary judgment to plaintiff International Indemnity Company, in its suit against Dixieland Truck Brokers, Inc., for insurance premiums allegedly owed. The trial court awarded International $73,016 principal, $25,566.71 interest, and 12 percent post-judgment interest. Apparently, International was assigned by the Automobile Insurance Assigned Risk Pool to issue automobile coverage for Dixieland beginning in September 1989. This suit was filed in December 1990.

Attached to the original complaint is a June 22, 1990, letter from an insurance agent to International, stating that Mr. Hollowell, the

owner of Dixieland, "disputes this bill." The agent's letter gave rea-, sons for Hollowell's repudiation of "this bill," to-wit, that International had not filed government-required documents, that "the Assigned Risk Department stated that there had not been any rate increase." The agent also stated that Dixieland had secured coverage from another carrier. Also attached to the complaint is a June 25, 1990 reply from International, asserting that indeed Dixieland owes the premium, and that Dixieland's coverage commenced September 1, 1989. There is no "bill" or other original statement of account in the record.

Dixieland denied the material allegations and filed interrogatories to discover all motor carrier filings relating to the policies; the reasons for International's failure to make such filings; the specific basis on which International calculated any debt; a list of all documents on which International relied; and other specific material information supporting International's claim.

Instead of answering those interrogatories, International hired new counsel and filed a motion for summary judgment. The motion asserts: "The defense is totally and completely overcome by the Affidavit of Benny Byrd, Jr., which sets forth the transactions with regard to this case and completely accounts for said indebtedness." This affidavit of Benny Byrd states he is vice president of International with supervision over its books and records, and that his review of those records "reveals an account balance due [from Dixieland] in the principal amount of $73,016.00." Attached to the affidavit is only a short writing on International's letterhead, stating: "The [Automobile Assigned Risk Pool] assigned our company to issue automobile coverage for Dixieland. . . . We issued automobile policies as indicated below, and an additional premium is due on each policy." The writing then names three policies and states a premium amount due for each.

Dixieland responded with an affidavit of its owner, Mr. Hollowell, denying that Dixieland owed International any premiums and stating that part of the premiums Dixieland had paid were assessed for regulatory filings which International never made; that International had not applied certain credits; and that when the insurance contract was entered, "I was assured that there would be no increase in premiums over [previous coverage]," but International's premium was "an increase of approximately 300 percent."

Dixieland also presented the affidavit of the insurance agent, averring that he procured insurance for Dixieland, and in his opinion, International's demand for "coverage allegedly provided" during portions of 1989-1991 was "excessive for the coverage provided [and has] been improperly calculated."

Dixieland moved to strike the affidavit of International's vice

president, Benny Byrd, as mere conclusion unsupported by sworn or certified copies of account records as required by OCGA §§ 9-11-56 (e) and 24-3-14. The trial court did later strike Benny Byrd's affidavit, but not before Benny Byrd filed another affidavit stating: "I have reviewed the affidavit of [Dixieland's owner] and find that it is flawed and incorrect." Benny Byrd stated that the reason no regulatory filings were made by International was that Dixieland refused to pay the premiums, which was fully explained to Hollowell in a March 1989 letter, attached; that he never told Dixieland there would be no increase in premiums and he did not know who did; that Hollowell had not specified any credits; and that the agent's affidavit had been completely refuted by the aforesaid and by the June 25, 1990 letter to the agent "in which the details of these policies were explained."
*Held*:

1. International's motion for summary judgment was wholly unjustified and unsupported. The only evidence of any debt is International's ipse dixit. There is no contract of insurance in the record. There is no "bill" or invoice in the record. The record shows International was assigned by a "risk pool" to provide coverage for Dixieland; a contract was entered and some premium was paid, but the contract was repudiated; International failed to perform duties under it because Dixieland did not pay; and Dixieland procured coverage elsewhere. In fact, there is no evidence that insurance *coverage* by International ever existed. International's vice president, Benny Byrd, stated that International never performed certain duties because Dixieland had not paid the premiums. It thus appears from International's affidavit that if a catastrophe had occurred, International could have denied coverage. As far as this record shows, there was no coverage. The existence of any contract, or performance thereof, is a matter of conjecture and is proved only by conclusory statements.

2. Moreover, even assuming a contract of coverage had been proved and that an indebtedness of some kind had been established, there is no clue how International arrived at $73,016 as the premiums owed. There are no contracts of insurance, no bills, no invoices, and no evidence of any agreement by Dixieland to pay that amount or any amount.

There is no evidence that these alleged premiums are a claim which draws interest monies. See OCGA § 9-12-10. It is a bold stroke for International to claim about 60 percent interest ($25,566.61 for six months from March 1990, when International apparently sent a "bill," to December 1990, when this suit was filed) or about 30 percent interest if figured from the date the alleged coverage commenced, September 1989, to the date this suit was filed. There is no evidence coverage existed beyond that date, if ever. In fact, the record shows that by June 1990, Dixieland had completely repudiated the

alleged coverage and at some point obtained coverage elsewhere. The fact that the trial court was in error and gave summary judgment in these amounts, and even awarded post-judgment interest *on the interest*, contrary to OCGA § 9-12-10, does not add bona fides to International's claims and motion for summary judgment.

Rather than answer Dixieland's interrogatories and provide evidence to support its claims, International demanded judgment based merely on an assertion of debt, on unsupported and unproved conclusions in affidavits with no original business records, bills, invoices, contracts or other evidence of debt. Conclusory and unsupported affidavits are insufficient to sustain a summary judgment. *Taquechel v. Chattahoochee Bank*, 260 Ga. 755, 756 (400 SE2d 8); *Pratt v. Tri City Hosp. Auth.*, 193 Ga. App. 473 (388 SE2d 69); see *Tyner v. Sheriff*, 164 Ga. App. 360 (297 SE2d 114). The unsupported "summary" of policies and premiums is inadmissible hearsay, without probative value at trial or on motion for summary judgment. See *E. H. Crump Co. v. Millar*, 200 Ga. App. 598, 601 (409 SE2d 235); *Thomasson v. Trust Co. Bank*, 149 Ga. App. 556, 559 (254 SE2d 881).

3. Even if International had produced proper business records, the fact that International charged Dixieland for premiums does not prove Dixieland owes anything. *Kinney v. American Mfg. Mut. Ins. Co.*, 189 Ga. App. 882, 883 (377 SE2d 900). The claim is wholly in dispute and unsupported by any proof of an agreement, a contract, performance and money owed.

On motion for summary judgment, the burden is on the movant, International, to establish the absence of any genuine issue of material fact and its right to recover as a matter of law. OCGA § 9-11-56 (c); *Kinney*, supra. The party opposing the motion, Dixieland, is entitled to all favorable inferences and the benefit of every doubt, and the evidence is construed most strongly in its favor. *Clark v. Assurance Co. of America*, 156 Ga. App. 526 (2) (275 SE2d 111). International made no prima facie case for any debt, certainly not one earning 30 to 60 percent interest. The trial court erred in granting summary judgment to International.

*Judgment reversed. Pope, C. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 1, 1993.

*Simpson & Gray, Joseph B. Gray, Jr., Elizabeth B. Gibbs*, for appellant.
*Clark & Mascaro, Mike A. Aziz*, for appellee.