A94A0500. TAEGER ENTERPRISES, INC. v. HERDLEIN TECHNOLOGIES, INC.
A94A0501. TAEGER ENTERPRISES, INC. v. OEHLER.
(445 SE2d 848)

McMURRAY, Presiding Judge.

After it was left unpaid for labor and services provided, plaintiff Taeger Enterprises, Inc. ("Taeger"), a Florida corporation, brought an action in the Superior Court of Columbia County, Georgia, alleging a variety of contract and tort claims against defendants Wallace Herdlein & Associates, Inc. ("Herdlein"), Herdlein's trade name, Herdlein, Inc., Herdlein's president, Cole Oehler, Jr., MetoKote Corporation ("MetoKote"), and John Deere Commercial Products, Inc. ("John Deere"). By amendment, Taeger alleged that defendant Herdlein Technologies, Inc. ("HTI") was "a corporation closely affiliated with" Herdlein and for "all purposes in Counts Three and Four of this Complaint, [HTI] is incorporated within the meaning of [Herdlein]."

Herdlein and Oehler jointly answered and denied the material allegations except that Herdlein admitted to transacting business in Georgia and admitted being indebted to Taeger in the amount of $57,047.91 as alleged in the complaint. HTI denied all material allegations. John Deere and MetoKote settled with Taeger and were dismissed. Herdlein filed for federal bankruptcy protection and also was dismissed. As against the remaining defendants, Oehler and HTI, Count 3 of the complaint alleged that Taeger was fraudulently induced to perform services by Oehler and HTI when neither had any intention of paying for those services. Count 4 alleged a conversion of Taeger's property in the form of money owed to the insolvent Herdlein. HTI and Oehler each moved for dismissal of the complaint based upon the lack of personal jurisdiction. In separate orders, the trial court granted the respective motions to dismiss. In Case No. A94A0500, Taeger appeals from the order dismissing the complaint as against HTI and in Case No. A94A0501, Taeger appeals from the order dismissing the complaint against Oehler. Taeger raises identical enumerations of error arising out of substantially the same set of facts. Upon motion, the cases have been consolidated for disposition in this single opinion. *Held*:

In support of their motions to dismiss, Oehler and HTI adduced the following, mostly undisputed, facts: Herdlein, doing business as Herdlein, Inc., submitted to MetoKote a proposal to design, build, and install a wet paint finishing system on MetoKote's premises in Columbia County, Georgia, which was leased from John Deere. Herdlein's proposal was revised on June 27, 1991, and on August 6, 1991, MetoKote gave written notice of acceptance addressed to "Wallace Herdlein." The paint system was designed and prefabricated outside of Georgia. Herdlein is an Illinois corporation, which is a wholly-owned subsidiary of a Swiss company. HTI is a separate Illinois corporation, formed on April 8, 1991, and wholly-owned by George Karahalios, an Illinois resident. In his affidavit, Karahalios deposed that he is the sole shareholder and director of HTI and that he and his wife are the only officers. Karahalios formerly had been an employee and vice president of Herdlein until his resignation on April 1, 1991, and neither he nor his wife has ever been a director, or shareholder of Herdlein. HTI offers engineering and design consulting services, primarily to Herdlein but also to anyone else engaged in a similar business or requiring such services. HTI rents space and secretarial services from Herdlein at the latter's corporate headquarters in Illinois but maintains its own books of account, separate from any maintained by Herdlein. Karahalios denied that HTI had ever entered into any contract with Taeger. According to him, HTI contracted with Herdlein in Illinois to provide engineering consulting services to Herdlein as a subcontract to Herdlein's MetoKote project. All

of HTI's services to Herdlein on this project were performed either in Illinois or Ohio. Karahalios admitted visiting the site in Georgia once for 15 minutes while he was otherwise in the Augusta area on behalf of a non-party to this action, but deposed that HTI "has not and does not solicit business in" or "engage in any course of conduct in" or "transact business in the State of Georgia." In a subsequent affidavit, after examining HTI's earnings, Karahalios deposed that HTI "has derived no revenue whatsoever from business transacted in Georgia."

In support of his motion, Oehler deposed by affidavit that he is an Illinois resident and the former president of Herdlein. He has never been a director of or shareholder in Herdlein. As the authorized and disclosed agent of Herdlein, he negotiated with Taeger for the installation subcontract. Negotiations between Taeger and Herdlein took place in the Herdlein office in Illinois and subsequent communications with Taeger were conducted between the Illinois office of Herdlein and the Florida office of Taeger. Oehler deposed that inquiries made by Taeger to Herdlein regarding sums owed Taeger under its subcontract originated from Taeger's Florida office. He stated that he visited the Georgia site once and spoke briefly with Herdlein's project manager but that "no financial dealings were discussed with Taeger representatives or anyone else during that trip." All financial decisions of Herdlein were made in Illinois and "all payment checks to Taeger were drafted in Illinois and sent to Taeger's Florida office." Oehler further deposed that he had "never personally conducted any business on my own behalf in the State of Georgia," in that he "never solicited business, engaged in any persistent course of conduct or derived revenue from Georgia." He identified as true and correct a copy of the revised proposal accepted by MetoKote. This proposal was submitted by Wallace Herdlein & Associates doing business as Herdlein, Inc. and contains no reference to HTI, either as a named party nor as an entity offering a limited warranty.

In opposition to the motions to dismiss, Taeger submitted the affidavit of its president, Jerry Taeger, whom we quote at length: After he had complained to Oehler that Taeger was not getting paid, Oehler "repeatedly promised deponent that there was money coming into Wallace Herdlein & Associates, Inc. and that deponent would certainly be paid if deponent kept on working on the job." As to HTI, Taeger deposed that Karahalios twice came to the Georgia job site "for the purpose of consulting with MetoKote Corporation and then checking Plaintiff's work. On each occasion Mr. Karahalios did spend time with MetoKote Corporation and then toured the job site, checked out Plaintiff's work, and complimented the deponent on the Plaintiff's work. During each of those trips Mr. Karahalios dealt with deponent regarding the construction project and the deponent's work on it at the job site in Columbia County, Georgia." Taeger further

deposed that he was "under the impression that Herdlein Technologies, Inc. was simply a part of Wallace Herdlein & Associates, Inc. and not a separate corporation. No one, during the course of the construction job in question, told deponent that Herdlein Technologies, Inc. was a separate corporation." As an exhibit to his affidavit, Taeger attached a copy of a 90-day promissory note dated April 6, 1992, and signed by Oehler in his capacity as president of Herdlein. The note was in the amount of $58,789.91 and recites that it was offered in exchange for Taeger's promise not to assert a claim of lien against the real property of John Deere in Augusta, Georgia. An additional exhibit is a copy of Herdlein's bankruptcy petition, filed on July 16, 1992. In further opposition to the motions to dismiss, Taeger relied upon MetoKote's answer to the complaint and allegations in MetoKote's cross-claim wherein MetoKote "admitted" that HTI was subject to the jurisdiction of the Superior Court of Columbia County, Georgia. Also Taeger relied upon MetoKote's responses to interrogatories, wherein MetoKote states "Herdlein Technologies participated in the bid procedure and the installation of the wet paint system at the John Deere plant in Columbia County, Georgia" and that MetoKote has "numerous cancelled checks in its possession that indicate it paid Herdlein Technologies, Inc. and Wallace Herdlein for all services performed on the installation of the wet paint system." Also, Taeger submitted a copy of a letter of September 23, 1991, sent by Karahalios under the HTI letterhead to a MetoKote representative in Lima, Ohio, confirming financial details resulting from design changes to the Herdlein proposal as originally accepted by MetoKote.

1. In related enumerations of error, Taeger contends that the dismissal of his complaint was erroneous as to each non-resident defendant because the evidence is conflicting and because that evidence shows the commission of a tort with consequences in Georgia by defendants transacting business in Georgia. OCGA § 9-10-91 (3) provides that a "court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he . . . [c]ommits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." Contending that its evidence shows that Oehler and HTI are subject to the jurisdiction of the Superior Court of Columbia County, Georgia, pursuant to OCGA § 9-10-91 (3), Taeger enumerates the grant of defendants' motions to dismiss due to the absence of personal jurisdiction.

A defendant who files a motion to dismiss pursuant to OCGA

§ 9-11-12 (b) (2) " 'has the burden of proving lack of jurisdiction. [Cits.] A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that defendant can be subjected to the jurisdiction of the court. To demonstrate that the court lacks jurisdiction, defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. See Uniform Superior Court Rule 6.1. [Cit.] Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. [Cit.]' " *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539 (428 SE2d 435). " 'If the motion is decided on the basis of written submissions alone, as was the motion in this case, disputes of fact found in the affidavits are resolved in favor of plaintiff. See generally, C. Wright and A. Miller, 5 Federal Practice and Procedure, § 1351 (West 1969, 1989 Supp.). Further, if a motion is decided on the basis of the written submissions, the reviewing court is in an equal position with the trial court to determine the facts and therefore examines the facts under a non-deferential standard. [Cit.]' *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222)." *Scovill Fasteners v. Sure-Snap Corp.*, 207 Ga. App. 539, 540, supra.

"[A]ffidavits made in support of [OCGA § 9-11-12 (b)] motions must conform to the requirements of [OCGA § 9-11-56 (e)]. Although the requirements of [OCGA § 9-11-56 (e)] are not expressly applicable to affidavits in general, those requirements stand as a codification of the common law requirements as to affidavits and hence are applicable as such. *Bryan v. Ponder*, 23 Ga. 480 (2) (1857); *Levin v. Myers*, 211 Ga. 474 (1) (86 SE2d 283) (1955); *Kniepkamp v. Richards*, 192 Ga. 509 (7) (16 SE2d 24) (1941); 2A CJS 481, Affidavits, § 43." *McPherson v. McPherson*, 238 Ga. 271, 272 (1) (232 SE2d 552). Pursuant to OCGA § 9-11-56 (e), "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Verified pleadings also "must comply with the [CPA §] 56 (e) requirement that both supporting and opposing affidavits shall be made on 'personal knowledge.' *Foskey* [*v. Smith*, 159 Ga. App. 163, 164 (283 SE2d 33)]." *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843). See also *Behar v. Aero Med Intl.*, 185 Ga. App. 845 (1), 846-847 (366 SE2d 223). An affidavit made or an attempt "made to verify the pleadings, not upon personal knowledge, but upon ' " "the best of (affiant's) knowledge' (and belief), . . . is just a variation of . . . 'information and belief.' " ' " *Spires v. Relco, Inc.*, 165 Ga. App. 4

(2) (299 SE2d 58); [cits.]" *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596, supra. With respect to artificial entities, a pleading "may be verified by any agent of the corporation who can and will depose positively to the facts stated therein. An answer [or other pleading] sworn to by an agent 'to the best of his knowledge and belief' is not properly verified without a further statement pointing out what facts he knows and what facts he believes, together with the grounds of his belief." *Plant & Son v. Mut. Life Ins. Co.*, 92 Ga. 636, hn. 2 (19 SE 719). However, where it appears that the facts contained therein are based upon personal knowledge, "the failure of the affidavits to assert they were made on personal knowledge will not require disregarding them." *Mathews v. Brown*, 235 Ga. 454, 456 (219 SE2d 701). Bare conclusions generally may not be used in affidavits to support or oppose CPA § 12 (b) motions. *Holloway v. Dougherty County School System*, 157 Ga. App. 251, 254 (277 SE2d 251). See also *McPherson v. McPherson*, 238 Ga. 271, 272 (1), supra.

The affidavits and exhibits submitted in the case sub judice to support the OCGA § 9-11-12 (b) (2) motions made out a prima facie case that the Superior Court of Columbia County, Georgia, lacked personal jurisdiction over Oehler and HTI for the torts of fraud and conversion allegedly committed without the territorial limits of Georgia but allegedly having consequences within those territorial limits, within the purview of OCGA § 9-10-91 (3). Application of the evidentiary principles stated above to the evidence submitted in rebuttal yields the following results:

MetoKote's answers to HTI's interrogatories are the bare legal conclusion asserting the existence of a contractual relationship between MetoKote and HTI, for they are unsupported by any statement of facts within the personal knowledge of the corporate officer verifying MetoKote's responses that HTI made any offer which MetoKote accepted. Moreover, certain answers appear to be mere unsworn statements made by counsel and not statements made under oath by a proper officer of the corporate party. See OCGA § 9-11-33 (a); *Plant & Son v. Mut. Life Ins. Co.*, 92 Ga. 636, hn. 2, supra. "The plain and unambiguous terms of CPA § 33 require a party to answer personally his opponent's interrogatories under oath. Interrogatories are not pleadings and counsel cannot answer them." *Gregory v. King Plumbing*, 127 Ga. App. 512 (1a) (194 SE2d 271). It follows that counsel's unsworn "answers to interrogatories are hearsay and inadmissible at the trial unless they fall within some recognized exception to the hearsay rule." *Carter v. Tatum*, 134 Ga. App. 345, 346 (1), 347 (212 SE2d 439). Compare *Woodson v. Burton*, 241 Ga. 130 (1) (243 SE2d 885). In response to Taeger's interrogatories, John Deere and MetoKote jointly submitted the properly verified statement that "John Deere and MetoKote have in their possession checks indicating

payments by MetoKote to the Herdlein defendants." This statement simply is not evidence that HTI was a party to the written contract between Herdlein and MetoKote or that MetoKote entered into a separate agreement with HTI for services to be performed in Georgia. Notably, Taeger does not refer this court to any MetoKote checks made payable to any Herdlein entity or trade name but which were negotiated by HTI. Jerry Taeger's affidavit that Oehler and Karahalios visited the Columbia County, Georgia, site for the "purpose" of checking up on Taeger's installation work is mere speculation as to another person's intent. "A witness may not ordinarily testify 'as to what the intent, purpose or contemplation of another may have been in a given situation.' *Summer v. Allison*, 127 Ga. App. 217 (1) (c) (193 SE2d 177) (1972)." *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 274 (5) (329 SE2d 900). Since Jerry Taeger's speculation as to intent is no stronger or more persuasive than the facts upon which that opinion is based, we consider those alleged facts only. *Michaels v. Gordon*, 211 Ga. App. 470, 472 (2), 473 (2a) (439 SE2d 722). See also *McPherson v. McPherson*, 238 Ga. 271, 272 (1), supra. Resolving the conflicting evidence in favor of the plaintiff, the facts alleged would show that Karahalios twice complimented Jerry Taeger on his work and told him: "We want to keep good installers." Taeger's ignorance of the fact that HTI has a corporate existence separate and apart from Herdlein is not competent evidence that HTI was an alter ego of Herdlein such that the actions of Herdlein in Georgia would be attributable to HTI. See *Collins v. Sheller-Globe Corp.*, 194 Ga. App. 263 (1) (390 SE2d 294). The fact that HTI and Herdlein shared offices, secretarial assistance, and telephone numbers is not evidence that HTI, as opposed to Herdlein, engaged in any persistent course of conduct in Georgia or derived substantial revenue from services performed here, since HTI as a "corporation is prima facie a distinct legal entity with rights and liabilities which are separate from those of" its sole shareholder and also from Herdlein. *Midtown Properties v. George F. Richardson, Inc.*, 139 Ga. App. 182, 185 (4) (228 SE2d 303). Karahalios' letter to MetoKote personnel in Ohio is not evidence that HTI established any purposeful contact with Georgia. The fact that Herdlein subcontracted to HTI some aspects of Herdlein's contractual obligations to MetoKote "would 'not have the effect of changing the relationship of the parties (to the writing, nor would it) result in a direct contract between the ([offeree, MetoKote and HTI] as the intended subcontractor).' *McGinnis v. Milhollin*, 64 Ga. App. 462, 463 (13 SE2d 591) (1941)." *Crispens Enterprise v. Halstead*, 209 Ga. App. 133 (1), 134 (433 SE2d 353). The bare reference to HTI in the boilerplate language of Herdlein's standard terms, conditions, and warranties, as found in the September 1991 modification to the existing August 6, 1991, contract between Herdlein and MetoKote did not make

HTI an additional party to that writing. *Crispens Enterprise v. Halstead*, 209 Ga. App. 133 (1), 134, supra. Oehler's two visits to the site are not sufficient to constitute the basis for Long Arm jurisdiction in Georgia. "Mere telephone or mail contact with an out-of-state defendant, or even the defendant's visits to this state, is insufficient to establish the purposeful activity with Georgia required by the 'Long Arm' statute. E.g., *O. N. Jonas Co. v. B & P Sales Corp.*, 232 Ga. 256 (206 SE2d 437) (1974)." *Wise v. State Bd. for Examination &c. of Architects*, 247 Ga. 206, 208 (2), 209 (274 SE2d 544). Likewise, the two alleged visits by Karahalios to the job site, wherein he complimented Taeger's work and told him "We want to keep good installers," would establish only a fortuitous or attenuated contact with the forum state, and would not establish corporate activities which are only continuous and systematic in addition to giving rise to the liabilities sued on. See *Wise v. State Bd. for Examination &c. of Architects*, 247 Ga. 206, 208 (2), 210, supra. Jerry Taeger's further assertion that Karahalios "dealt" with him on those visits is a bare conclusion unsupported by specific factual allegations and so fails to show HTI's persistent conduct purposefully directed to the forum state related to the causes of action.

After a careful examination of the record, with all reasonable inferences drawn in favor of authorizing the exercise of Long Arm personal jurisdiction, we conclude that the material facts are undisputed or are unrefuted by competent evidence. Pursuant to those undisputed material facts, neither Oehler personally nor HTI via its agent Karahalios "[t]ransacts any business within this state" within the meaning of OCGA § 9-10-91 (1). *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 847 (2), 848, supra. Neither Oehler personally nor HTI via its agent, as alleged tortfeasors, "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state" as required by OCGA § 9-10-91 (3). *State of South Carolina v. Reeves*, 205 Ga. App. 656, 657 (1) (423 SE2d 32). The trial court correctly determined that neither Oehler nor HTI is subject to the exercise of personal jurisdiction over them by the Superior Court of Columbia County in Taeger's suit for fraud and conversion under the authority of OCGA § 9-10-91.

2. Additionally, the trial court correctly dismissed Taeger's complaint against each defendant due to the lack of personal jurisdiction as it appears that any tortious conduct committed outside of Georgia has had no in-state consequences so as to invoke the protective policy of this state to provide " 'redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations to, those within the ambit of the State's legitimate protective policy.' " *Coe & Payne Co. v. Wood Mosaic Corp.*, 230 Ga. 58, 61 (195 SE2d 399). The

Georgia Long Arm Statute "requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction. Where . . . it is shown that no such acts were committed, there is no jurisdiction." *Gust v. Flint*, 257 Ga. 129, 130 (356 SE2d 513). "[A] 'tortious' act is a composite of both negligence and damage, and if damage occurred within the state then the tortious act occurred within the state within the meaning of subsection ([3]) of the Long Arm Statute." *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 60, supra. Conversely, if, as a result of an out-of-state act or omission, no damage has occurred within Georgia, then no tortious act occurred within this state within the meaning of OCGA § 9-10-91 (3). "To say otherwise would result in an unconstitutionally broad construction of Georgia's Long Arm Statute." *State of South Carolina v. Reeves*, 205 Ga. App. 656, 657 (1), 658, supra. The undisputed course of conduct whereby Herdlein performed its contractual obligation of payment for services rendered was to mail from "the company's Illinois office" a total of $53,000 in checks which were "drafted in Illinois and sent to Taeger's Florida office." The alleged tort of conversion would have been committed in Illinois, where, according to Oehler's unrefuted affidavit, "[a]ll financial decisions of Wallace Herdlein were made. . . ." Any injury resulting from that alleged conversion occurred in Florida, when money received by Herdlein was not paid over to Taeger in accordance with Herdlein's contractual duties and Taeger's contractual rights and reasonable expectations. Similarly, the alleged fraud in inducing Taeger to continue to perform services in Georgia under its express subcontract with Herdlein, at a point when Taeger had doubts about the solvency of the latter, would result in damage to Taeger only when Herdlein failed to pay. That failure to pay, according to the past performance of the parties to the contract, was a failure to mail to Florida a check drafted in Illinois. Such an allegedly tortious failure to pay in the manner heretofore contemplated has no meaningful connection with Georgia as the purported forum state.

3. Taeger's remaining enumeration has been considered and is found to have been rendered moot.

*Judgments affirmed. Pope, C. J., and Smith, J., concur specially.*

Pope, Chief Judge, concurring specially.

In this case, a Florida corporation is suing an Illinois corporation and an individual Illinois resident for fraud and conversion. The alleged acts of fraud and conversion occurred in Illinois and caused injury in Florida. Georgia simply has no interest in this action, and the mere fact that the alleged tortious acts occurred in the context of a dispute about a contract relating to a project in Georgia does not pro-

vide such an interest. "Jurisdiction must be predicated on the existence of ties among the defendants, this state, and the litigation, so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Shaffer v. Heitner*, 433 U. S. 186 [(97 SC 2569, 53 LE2d 683) (1977)]." *Hart v. DeLowe Partners, Ltd.*, 147 Ga. App. 715, 717 (2C) (250 SE2d 169) (1978). As these ties do not exist here, I agree that the trial court did not err in dismissing plaintiff's suit.

I am authorized to state that Judge Smith joins in this special concurrence.

DECIDED JULY 1, 1994.

*Jay M. Sawilowsky*, for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, James W. Purcell, Hull, Towill, Norman & Barrett, George R. Hall*, for appellees.