A95A0753. HASSELL v. FIRST NATIONAL BANK OF NEWTON COUNTY.
(461 SE2d 245)

ANDREWS, Judge.

Hassell, individually, and PCC, Inc., d/b/a Piedmont Cabinet Company (PCC) (by Hassell as president) co-signed a note in favor of First National Bank of Newton County (the Bank) in the principal sum of $50,000. After the note went into default, the Bank sued Hassell, individually, for the unpaid balance. Hassell admitted he signed the note in his individual capacity and did not contest the Bank's computation of the balance claimed due, but he denied on various grounds that he was liable for the unpaid balance.

On appeal, Hassell claims that summary judgment was erroneously granted in favor of the Bank because: (1) he co-signed the note as a guarantor for no consideration; (2) there was a novation pursuant to OCGA § 10-7-21 which discharged his liability under the note; (3) the Bank took actions that increased his risk and discharged or released his obligation on the note pursuant to OCGA § 10-7-22; and (4) the Bank failed to dispose of secured collateral in a commercially reasonable manner as required by OCGA § 11-9-504. Because Hassell failed to establish a factual basis for any of these claims, the trial court correctly granted summary judgment in favor of the Bank.

1. Even if Hassell individually co-signed the note as a guarantor for PCC, he did so in consideration of the benefit to PCC, and he was jointly and severally liable along with PCC for the balance on the note.

The note on its face shows that Hassell co-signed with PCC and shows that the note was for a renewed line of credit secured by inventory and equipment of PCC. The note further provided that, as a co-signer, Hassell was "jointly and severally liable" for the amounts due.

In his affidavit in opposition to summary judgment, Hassell nevertheless asserted that he signed the note as a guarantor and that he did not personally receive consideration for the note.

Even if Hassell co-signed the note as a guarantor and PCC received the entire $50,000 line of credit, Hassell signed in consideration of the benefit flowing to PCC. "The contract of suretyship or guaranty is one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal. . . . Sureties, including those formerly called guarantors, are jointly and severally liable with their principal unless the contract provides otherwise." OCGA § 10-7-1. Even assuming the Bank was aware that Hassell co-signed as a guarantor to accommodate PCC, knowledge that Hassell signed as an accommodation party to guarantee the note would not relieve him of the joint and several liability he assumed under the terms of the note. *Brice v. Northwest Ga. Bank*, 186 Ga. App. 871, 872 (368 SE2d 816) (1988); *Darien Bank v. Miller*, 208 Ga. App. 562, 564 (431 SE2d 165) (1993).

2. All of Hassell's remaining claims are wholly predicated on assertions made in his affidavit in opposition to summary judgment.[1] As set forth below, we conclude that the affidavit created no issue of fact as to these claims because material portions of it are not based on Hassell's "personal knowledge" as required by OCGA § 9-11-56 (e) and because portions of it rely on hearsay having no probative value.

Hassell's affidavit recites that it was "given of my own knowledge, information and belief." OCGA § 9-11-56 (e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "An affidavit based upon 'the best of his knowledge and belief' is nothing more than the affiant's opinion given without any demonstrated basis of knowledge. It is basic that unsworn allegations are not evidence; nor do they rise to that level when accompanied by an affidavit made, not upon personal knowledge, but upon the 'best of affiant's knowledge,' which is just a variation of our old friend 'information and belief.' Every item set forth as a fact in [such an] affidavit may be false, and yet each one may be true to the best of the knowledge and belief of the affiant." (Citations, punctuation, and emphasis omitted.) *Morris-Bancroft Pa-*

---

[1] Although the capacity in which Hassell signed the note established that he was jointly and severally liable for the balance due on the note, his claims of discharge pursuant to OCGA §§ 10-7-21 and 10-7-22 remain viable despite the capacity in which an accommodation party may sign a note. *Cohen v. Northside Bank & Trust Co.*, 207 Ga. App. 536, 537 (428 SE2d 354) (1993).

*per Co. v. Coleman*, 188 Ga. App. 809, 810 (374 SE2d 544) (1988). Nevertheless, if an examination of the contents of the affidavit shows that portions of it are based on personal knowledge rather than information and belief, then the failure to assert that the affidavit was based on personal knowledge does not require that those portions be disregarded. *Taeger Enterprises v. Herdlein Technologies*, 213 Ga. App. 740, 745 (445 SE2d 848) (1994). Accordingly, each part of Hassell's affidavit asserted in support of his claims must be examined to determine if it shows personal knowledge of the facts asserted.

A detailed examination of the affidavit shows that it contains a mixture of allegations, some of which appear to be based on personal knowledge, some of which are nothing more than opinion and speculation, and some of which are hearsay. Hassell states in the affidavit: that on an undisclosed date after the note was executed, he attended a closing at which certain PCC assets were sold to Piedmont Woodworking, Inc.; that the closing attorney took a check in the amount of $8,046.04 due to the seller and "forwarded the same to [the Bank]" without his consent; that at the closing, the title to a vehicle was required to be surrendered to the closing attorney and he "assumes that [the vehicle] was transferred to [the Bank]" without his consent; that at the closing, "the closing attorney required [him] to sign over the UCC Financing Statement and note of PCC, Inc. to [the Bank]"; that "the assets sold to Piedmont Woodworking, Inc. by PCC, Inc. apparently are still in the possession and control of Piedmont Woodworking, Inc. and [the Bank] has not moved in a timely and commercially reasonable manner to repossess or otherwise realize the value of those assets"; that "[a]pparently [the Bank] has not made efforts to collect the assigned note from Piedmont Woodworking, Inc. in a commercially reasonable or timely manner"; that the note was due June 22, 1991, and when he went to renew the note in May 1991, an agent of the Bank told him "that Piedmont Woodworking, Inc. and/or John Colby had assumed the note with [the Bank] and that it need not be renewed by [him]"; that he "got the impression that he did not have to pay on the note and that [the Bank] would look to Piedmont Woodworking, Inc. and/or John Colby for payment"; that "it appear[ed] to [him] that notices from [the Bank] on the status of the account on the note now sued upon went to Piedmont Woodworking, John Colby, or others"; that "[the Bank] apparently took payments from Piedmont Woodworking, Inc. and/or John Colby to affect the amount of any note from PCC, Inc. and/or [him] to [the Bank]"; that "[the Bank] did not provide [him] or PCC, Inc. directly with any accounting of those payments, any indication of how those payments were credited, the currency of payments, or other pertinent information concerning the status of the loan from April, 1991 until present"; that "[the Bank] has apparently stretched out the note for Piedmont

Woodworking, Inc. and/or John Colby to allow payment for a longer period"; and that "[he] did not renew his note nor did he have any knowledge that [the Bank] had restructured the payment schedule on the note for Piedmont Woodworking, Inc. and/or John Colby."

The affidavit asserted that an agent of the Bank told Hassell that Piedmont Woodworking had assumed the note with the Bank and relieved Hassell and PCC from any further payments. Although Hassell asserts personal knowledge of the agent's statement, this portion of the affidavit repeats hearsay by an agent of the Bank which has no probative value and cannot be considered in summary judgment proceedings. *Sarantis v. Kroger Co.*, 201 Ga. App. 552, 553 (411 SE2d 758) (1991). Further, since the hearsay statement was the agent's recollection of past events, it was not admissible under the res gestae exception to the hearsay rule, nor was it admissible as the agent's admission under OCGA § 24-3-33. OCGA § 10-6-64; *Southern R. Co. v. Allen*, 118 Ga. App. 645, 646 (165 SE2d 194) (1968); *Sarantis*, supra at 553.

Although the affidavit does show Hassell's personal knowledge that PCC sold some undisclosed assets to Piedmont Woodworking, the affidavit does not state whether the assets sold were the assets held as security by the Bank. There is no evidence of what the Bank's connection was, if any, to the sale and no evidence that the Bank took or required any action as a result of the sale. It is unclear what the affidavit means by asserting that the closing attorney required Hassell to sign over the UCC financing statement and the note of PCC to the Bank. The UCC financing statement was a document filed by the Bank reflecting that the Bank held a security interest in certain assets of PCC, and the note was an instrument already signed by Hassell and PCC reflecting indebtedness to the Bank.

Other portions of the affidavit made by Hassell upon his "personal knowledge, information and belief" must be disregarded on summary judgment because it does not affirmatively appear that Hassell had personal knowledge of assertions: that the Bank received $8,046 collected by the closing attorney at the sale; that the vehicle surrendered at the sale to the closing attorney was transferred to the Bank; that the Bank took payments from Piedmont Woodworking on the note given by PCC and restructured the payment schedule on the note; nor that notices from the Bank on the status of the note were sent by the Bank to Piedmont Woodworking. " 'If it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment.' *Chandler v. Gately*, 119 Ga. App. 513-514 (1a) (167 SE2d 697) (1969)." *Morris-Bancroft Paper Co.*, supra at 811.

There is no evidence by affidavit or otherwise that, after default on the note, the Bank repossessed and disposed of secured collateral, thus invoking the requirements of OCGA § 11-9-504. Moreover, the Bank's failure, if any, to recover secured collateral sold by PCC to Piedmont Woodworking would not preclude it from seeking recovery under the note from Hassell. "There is no requirement that the holder of a note proceed against the collateral before looking to the endorser or maker." *Southeastern Bank v. Renfro*, 208 Ga. App. 487, 488 (430 SE2d 860) (1993).

Since there was no competent evidence in the record to support Hassell's claims that he was discharged or released on the basis of a novation under OCGA § 10-7-21, or because the Bank took actions which increased his risk pursuant to OCGA § 10-7-22, or because the Bank failed to dispose of secured collateral in a commercially reasonable manner under the requirements of OCGA § 11-9-504, no genuine issue of fact remained, and the trial court properly granted summary judgment in favor of the Bank.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent, as it is my view that the affidavit of Grady T. Hassell, Jr. (defendant) is sufficient to raise genuine issues of material fact as to the defenses of impairment of collateral, release and novation.

After the First National Bank of Newton County ("the bank") initiated this action against defendant to recover upon a promissory note that was secured by inventory and equipment owned by PCC, Inc., d/b/a Piedmont Cabinet Company ("PCC"), defendant raised the defenses of impairment of collateral, novation and release. The bank, however, failed to offer a scrap of evidence in opposition to these or any other defense. It, instead, moved for summary judgment, relying on undisputed proof that defendant executed a $50,000 promissory note in its favor on December 22, 1990, in his individual capacity as well as his capacity as president of PCC; that defendant executed the promissory note in exchange for renewal of PCC's line of credit; that the promissory note remains unpaid even though it came due on June 22, 1991, and that the unpaid principal balance plus accrued interest on the underlying debt was $33,029.53 as of August 1, 1994. In opposition, defendant filed his own affidavit, deposing that he executed the promissory note as PCC's guarantor; that PCC's assets were transferred to Piedmont Woodworking, Inc., with the bank's consent in April 1991; that the bank then seized the proceeds of the asset sale ($8,046.04) without prior notice or the consent of defend-

ant; that the bank either allowed Piedmont Woodworking to retain certain collateral ("a 1984 Chevrolet van . . .") or otherwise took possession of this collateral without defendant's consent; that the attorney who closed the asset sale transaction "required Defendant to sign over the UCC Financing Statement and note . . ." to the bank and that the bank informed defendant in May 1991 (before the promissory note came due) that renewal of the debt was unnecessary because Piedmont Woodworking had assumed the promissory note and (apparently) PCC's line of credit. Defendant also deposed that he received no statements regarding credits, debits or balances under the line of credit after the sale of PCC's assets in April 1991.

"Under OCGA § 10-7-21 a change in the terms of a contract, a 'novation,' without a surety's consent, discharges him. [Further,] OCGA § 10-7-22 provides for a surety's release based on acts by a creditor which result in either: 1) injury to the surety or 2) increasing the surety's risk or 3) exposing the surety to greater liability. *W. T. Rawleigh Co. v. Kelly*, 78 Ga. App. 10, 14 (2) (50 SE2d 113) (1948)." *Bank of Terrell v. Webb*, 177 Ga. App. 715 (2) (341 SE2d 258). In the case sub judice, the majority holds that defendant's affidavit does not raise genuine issues of material fact as to any of these defenses. I do not agree with this assessment.

" 'The party opposing the motion [summary judgment] is entitled to all favorable inferences and the benefit of every doubt, and the evidence [must be] construed most strongly in [the opposing party's] favor. (Cit.)' *Dixieland Truck Brokers, Inc. v. Intl. Indem. Co.*, 210 Ga. App. 160, 163 (3) (435 SE2d 520) (1993); see, e.g., *Lau's Corp v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Miller v. Rieser*, 213 Ga. App. 683, 684 (446 SE2d 233). In the case sub judice, defendant's affidavit may not be artfully drafted, but it does convey (without dispute) that PCC's assets were transferred to Piedmont Woodworking with the bank's consent in April 1991 and that, in executing this sales transaction, the bank's attorney directed defendant to turn over the proceeds of the asset sale and at least one piece of the collateral, i.e., "a 1984 Chevrolet van. . . ." It is my view that this evidence alone is sufficient to raise genuine issues of material fact regarding increased risk to defendant as guarantor of the promissory note. To say otherwise ignores the reality that the bank offers no explanation as to the disposition of the collateral or application of the proceeds of the asset sale agreement.

DECIDED JULY 12, 1995 —
RECONSIDERATION DENIED JULY 28, 1995 — 

*Marilyn S. Bright*, for appellant.
*Crudup & Hendricks, E. A. Crudup, Jr.*, for appellee.