A99A1757. SCOTT v. MAMARI CORPORATION et al.
(530 SE2d 208)

POPE, Presiding Judge.

Robert Lewis Scott, Jr. d/b/a Scott Construction reconstructed a dam located on a real estate development but was not fully paid for his services. Apparently unable to recover from the developer with whom he contracted, Scott filed claims against two of the development's creditors and claimed that he was a third-party beneficiary to certain financing agreements related to the development. The trial court granted the creditors' motion for summary judgment, and Scott appeals. Because we find that Scott was neither a third-party beneficiary of these agreements nor entitled to equitable relief against the creditors, we affirm.

On review of the grant of a motion for summary judgment, we construe the facts and all inferences in favor of the nonmovant. *Dixieland Truck Brokers v. Intl. Indem. Co.*, 210 Ga. App. 160, 163 (3) (435 SE2d 520) (1993); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In 1995, Mountain Lakes Resort, Inc. (the "Resort") solicited several bids for the dam restoration and eventually accepted Scott's bid to perform the work. The Resort applied for a line of credit for the

---

[6] *Garrison v. Perkins*, 137 Ga. 744, 755 (74 SE 541) (1912).

project from its primary lender, First National Bank of Gainesville, now known as Regions Bank (the "Bank"), and it requested $200,000 based in part on Scott's bid of $111,992 plus approximately $55,200 for required engineering fees. The Bank issued a line of credit in the amount of $175,000, and the Resort signed a promissory note for this amount. Scott began work and was paid on two of three invoices he submitted. The Bank made the payments payable jointly to Scott and the Resort.

The cost of the project grew larger because of unforeseen developments, and the Resort sought an additional $63,879.24 from the Bank. The amount was based in part on Scott's estimated cost to complete the project. The Bank agreed to extend the line of credit by the requested amount. There is a promissory note associated with the extension in the record dated January 10, 1996, and identified as "Note No. 2500," but it is not signed by the Resort. Shortly after Scott submitted his third invoice for the final payment, certain other Resort creditors filed an involuntary bankruptcy petition naming the Resort as the debtor.

On February 16, 1996, the Bank assigned all its rights, title and interest as a creditor for the development, including the loans related to the dam project, to the Mamari Corporation. But the Bank agreed that it would remain responsible for funding the $63,879.24 line of credit. Paragraph 8 of the Mamari agreement provides:

> Bank's Commitment to Fund Draw Note: The Bank has committed to advance up to $63,879.24 to [the Resort] under that certain draw note no. 2500 from [the Resort] to the Bank dated January 10, 1996. The Bank hereby assures MAMARI that it will honor that commitment unless prevented from doing so by statute, court order or other rule of law.

Scott was not a party to this agreement.

On July 1, 1997, apparently after the bankruptcy was resolved, the Resort made a request to the Bank for a draw in the full amount of the second note. The request was supported in part by the final invoice from Scott, but also by other contractors' invoices. The request stated that the contractors had been paid for their work, and it requested that payment be made directly to the Resort. In December 1997, promissory note no. 9001 was signed by the Resort in the amount of $63,879.24. The Bank disbursed a check in that amount payable to the Resort, but the Resort never paid Scott on his third invoice. Scott brought suit against Mamari and the Bank for payment of the final invoice, claiming to be a third-party beneficiary of both the promissory note between the Resort and the Bank and para-

graph 8 of the Mamari agreement.

1. Scott contends the trial court erred in determining that he was not a third-party beneficiary to the two agreements. Intent to create a third-party beneficiary must be shown in the contract: "In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." (Citations and punctuation omitted.) *Miree v. United States*, 242 Ga. 126, 135 (3) (249 SE2d 573) (1978); OCGA § 9-2-20 (b). "Unless such an intention is shown on the face of the contract, defendant is under no duty and consequently plaintiff acquires no right as the third party beneficiary." *Plantation Pipe Line Co. v. 3-D Excavators*, 160 Ga. App. 756, 757 (287 SE2d 102) (1981). A contract is intended to benefit a third party when the promisor engages to the promisee to render some performance to a third person. *Starrett v. Commercial Bank of Ga.*, 226 Ga. App. 598 (1) (486 SE2d 923) (1997).

As for the promissory notes, not one of the various notes is signed by the Bank, which, according to Scott, was bound to make loan disbursements to him. Rather, the notes are promises by the Resort to repay the Bank. They do not even purport to contain any promises by the Bank to do anything for the Resort, let alone Scott. There is no indication of any intent to benefit Scott in any of the notes, which is what Scott claimed. The only indication of intent is found in the original note, and it says that the purpose of the loan was to "provide for unbudgeted expenses." Further, the fact that the Resort used Scott's estimated cost to complete as a basis for the amount it sought in the loan extension did not create a third-party obligation for the Bank to issue the loan proceeds to Scott. It is commonplace to base a loan request on anticipated need. This fact alone does not create an obligation on the lender to disburse the loan to the party to whom the borrower intends to pay with the borrowed funds.[1]

Scott contends that the fact that the first two loan disbursements were made jointly payable to him is evidence that the Bank intended that the loan agreement would benefit him. But, again, there is no indication of an intent to benefit Scott on the face of any note or loan agreement. Joint payments could have been made for any one of a number of reasons.

Finally, the fact that everyone knew that the loan was for the

---

[1] It should be noted that generally "[a] construction lender has no duty 'to protect the subcontractors from the risks of doing business with its borrower . . . (or) to supervise the borrower's disbursement of the advances and control the funds for the benefit of the subcontractors.' [Cit.]" *Light v. Equitable Mtg. Resources*, 191 Ga. App. 816, 817 (2) (383 SE2d 142) (1989).

dam project does not mean that the contractors who were going to perform the work were intended beneficiaries of the loan agreement.

As for the Mamari agreement, Scott focuses on paragraph 8. It is true that, "Notwithstanding the ultimate purpose of [an] agreement, individual contract provisions may be intended to benefit a stranger to the contract, thus creating a third-party beneficiary." *Starrett*, 226 Ga. App. at 601 (1). But Scott is not mentioned in the Mamari agreement by name or otherwise. There is no limitation in the agreement on how the Resort could use the loan proceeds. The funds were not earmarked for use only by Scott. There is no promise in the agreement that the Bank would disburse the loan proceeds to Scott or jointly to Scott and the Resort. Thus, there is nothing in the agreement that "clearly indicates" the contract was intended to benefit Scott. See, e.g., *Light*, 191 Ga. App. at 817-818 (2) (loan guarantor not third-party beneficiary of agreement between borrower and lender delineating terms for advancing loan proceeds).

Rather, paragraph 8 of the Mamari agreement merely represents an agreement between Mamari and the Bank as to who would fund the loan which had already been entered into. Simply agreeing who would satisfy the obligation did not create a third-party beneficiary where none previously existed.

Scott was only an incidental beneficiary to the various loans and the Mamari agreement. The trial court correctly held that Scott was not a third-party beneficiary.

2. Scott also claims he is entitled to payment from the Bank and Mamari under the theories of quantum meruit and unjust enrichment.

OCGA § 9-2-7 provides: "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." But the law will not imply a promise contrary to the intention of the parties. *Smith Dev. v. Flood*, 198 Ga. App. 817, 820-821 (403 SE2d 249) (1991). Scott entered into a contract with the Resort, not the Bank or Mamari. And he had no contact with the Bank or anyone sufficient to create an expectation of payment directly from the Bank for his work. He performed the work based on his express contract with the Resort, not based on any implied contract.

Scott's claim for unjust enrichment also fails. "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received. . . ." *Reidling v. Holcomb*, 225 Ga. App. 229, 232 (2) (483 SE2d 624) (1997). There is no evidence that either the Bank or Mamari did anything to fall under this rule. Neither received the direct benefit of Scott's labor. And any indirect benefit to the Bank's

collateral resulting from repair of the dam was only the natural by-product of all work performed on a financed real estate project. Also, the Bank paid $63,879.24 to the Resort in direct connection with the dam project. The fact that this money did not find its way to Scott does not mean that the Bank or Mamari has been unjustly enriched.

Scott either has or had remedies available against the Resort, the property (he filed a materialman's lien), or possibly other parties not relevant here. But his claims against the Bank and Mamari were rightly dismissed.

*Judgment affirmed. Smith and Miller, JJ., concur.*

DECIDED FEBRUARY 22, 2000.

*Newman, Sapp & Davis, Michele L. Davis*, for appellant.
*Stewart, Melvin & Frost, J. Douglas Stewart*, for appellees.