SPRING VALLEY IV JOINT VENTURE, A NEBRASKA GENERAL PARTNERSHIP, ET AL., APPELLANTS, V. NEBRASKA STATE BANK OF OMAHA, A NEBRASKA CORPORATION, APPELLEE.

690 N.W.2d 778

Filed January 14, 2005. No. S-03-965.

Edward D. Hotz and Patrick M. Flood, of Hotz, Weaver, Flood & Breitkreutz, for appellants.

James B. Cavanagh, of Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L.O., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

Leo Dahlke and R.C.S. & Sons, Inc. (R.C.S.), entered into several loan agreements with Nebraska State Bank of Omaha (Bank), the appellee, in the spring of 2001. The loan proceeds were distributed via cashier's checks to Dahlke and R.C.S. On the loan documents, Dahlke and R.C.S. indicated that the purpose of the loans was to fund interests in the appellants. The appellants (Partnerships) are seven Nebraska partnerships that collectively filed an action against the Bank, claiming they were entitled to the proceeds of the Dahlke and R.C.S. loans and that

the Bank converted the funds by distributing them to other entities. The district court dismissed the action for lack of standing, and the Partnerships appeal. For the reasons set forth below, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 8 and April 12, 2001, Dahlke and R.C.S. entered into several loan agreements with the Bank. Dahlke and R.C.S. executed separate promissory notes to the Bank and completed corresponding disbursement request and authorization forms, providing instructions for the disbursement of the loan proceeds. These forms indicated that the purpose of the loan proceeds was to fund interests in the Partnerships, but ordered the proceeds to be paid directly to the respective borrowers, Dahlke or R.C.S. Pursuant to those instructions, the proceeds of the loans were disbursed by cashier's checks, payable to Dahlke and R.C.S., individually. With the proceeds of the March 8 loans, Dahlke and R.C.S. purchased new cashier's checks, payable to Spring Valley IV Joint Venture, Spring Valley V Joint Venture, Spring Valley X Joint Venture, and Spring Valley XI Joint Venture. The proceeds of the April 12 loans were also used to purchase new cashier's checks, payable to the following parties: Prime Realty, Inc., remitted on behalf of Dahlke, R.C.S., and Brook Valley VI Joint Venture; Prime Realty, Inc., remitted on behalf of Dahlke, R.C.S., and Brook Valley XII Joint Venture; and Prime Realty, Inc., and Heartland Title Services, remitted on behalf of Dahlke, R.C.S., and Brook Valley XIII Joint Venture.

The Partnerships collectively filed an action against the Bank, claiming that the proceeds of the Dahlke and R.C.S. loans were meant to fund the Partnerships and alleging that the Bank engaged in conversion and conversion of instruments in distributing the proceeds to other entities. The Bank filed a motion to dismiss, asking the court to consider evidence outside the pleadings and convert the motion to a motion for summary judgment. See Neb. Ct. R. of Pldg. in Civ. Actions 12(b) (rev. 2003). In its motion, the Bank asserted, inter alia, that the Partnerships had no rights or interest in the loan proceeds and, thus, could not maintain an action for conversion.

After a hearing on the motion, the district court entered an order granting the Bank's motion for summary judgment and

dismissing the case, finding that the Partnerships lack standing to bring the suit. The Partnerships appeal.

## ASSIGNMENTS OF ERROR

The Partnerships assign, summarized and restated, that the district court erred in dismissing the case for lack of standing and failure to state a claim for conversion.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Plowman v. Pratt*, 268 Neb. 466, 684 N.W.2d 28 (2004).

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004).

## ANALYSIS

The Partnerships assign that the district court erred in finding that the Partnerships lack standing to maintain a conversion action against the Bank. The Partnerships argue that under the terms of the loan documents, they are third-party beneficiaries of the loan agreements, have a legal or equitable interest in the loan proceeds, and, thus, have standing to sue the Bank.

The Bank counters, arguing that the Partnerships lack standing because they were not parties to the loan transactions and had no other agreement directly with the Bank. Accordingly, the Bank asserts that even if Dahlke and R.C.S. agreed to use the loan proceeds to fund interests in the Partnerships, such an understanding with the borrowers does not give the Partnerships standing to sue the Bank.

In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy. *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002); *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002). In the present case, the

Partnerships concede that they were not parties to the loan agreements entered into by the Bank and the borrowers, Dahlke and R.C.S., but claim rights to the proceeds as third-party beneficiaries of those agreements.

While the Partnerships are not suing for breach of contract, their conversion action rests upon alleged property rights that are, in turn, based on the loan agreements. In other words, while this is not a contract action, the Partnerships' argument requires us to consider principles of contract law to determine if the Partnerships did, indeed, acquire any rights under the loan agreements as intended beneficiaries.

Beneficiaries of a contract may recover thereon, though not named as parties, if it appears by express stipulation or by reasonable intendment that the rights and interests of the unnamed parties were contemplated and provision was being made for them. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994). As stated by the Court of Appeals of North Carolina, "[t]he test is whether the parties to the contract intended to confer a benefit directly upon the third party or whether the benefit to the third party was merely incidental." *Chemical Realty Corp. v. Home Fed'l Savings & Loan*, 84 N.C. App. 27, 33-34, 351 S.E.2d 786, 790 (1987).

The Restatement (Second) of Contracts distinguishes between an intended beneficiary and an incidental beneficiary:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 at 439-40 (1981). In illustrating the distinction, the Restatement offers the following scenario:

B promises A to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If the promise is interpreted as a promise that B will pay C, D and E, they are intended beneficiaries under Subsection (1)(a); *if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries.*

(Emphasis supplied.) Restatement, *supra*, comment *b.*, illus. 3 at 441. An incidental beneficiary acquires no right against the promisor or promisee. *Century Bank v. Makkar*, 132 Md. App. 84, 751 A.2d 1 (2000).

In the present case, Dahlke and R.C.S. indicated that the purpose of the loans was to fund partnership interests. Although the March 8, 2001, distribution request and authorization forms referred specifically to funding partnership interests in Spring Valley Partnerships, the April 12, 2001, forms referred generally to funding interests in partnerships. On the same forms, Dahlke and R.C.S. provided instructions for the disbursement of the loan proceeds, instructing that the funds, minus any fees, be disbursed directly to the borrower, Dahlke or R.C.S. The forms made no instruction for the Bank to disburse funds to the Partnerships.

In *Scott v. Mamari Corp.*, 242 Ga. App. 455, 530 S.E.2d 208 (2000), Robert Scott constructed a dam on a real estate development but was not fully paid for his work by the resort with whom he contracted. Scott filed claims against the resort's creditors, claiming that he was a third-party beneficiary to certain financing agreements related to the development. One such agreement involved an extension of credit of $63,879, an amount based on Scott's estimated cost to complete the dam. The resort requested the full amount of the note, supported by a final invoice from Scott, and stated that the contractors had been paid and payment should be made directly to the resort. The Bank disbursed the funds as directed, but the resort failed to pay Scott on his final invoice. The Court of Appeals of Georgia determined that Scott was not an intended beneficiary of the loan agreement. Specifically, the court stated that the notes represented promises by the resort to repay the Bank and not promises by the Bank to do anything for Scott. The court stated that "[i]t is commonplace to base a loan request on anticipated need. This fact alone does

not create an obligation on the [part of the] lender to disburse the loan to the party to whom the borrower intends to pay with the borrowed funds." *Id.* at 457, 530 S.E.2d at 211.

We agree with the court's reasoning. Likewise, in the instant case, the evidence indicates that the Bank was under no obligation to disburse funds directly to the Partnerships, but, rather, was obligated to disburse the funds to the individual borrower, who would then be able to invest the sums in the Partnerships. Thus, we conclude that the Partnerships were at most incidental beneficiaries of the loan agreements and, therefore, lack any enforceable property rights to the loan proceeds. Accordingly, the Partnerships lack standing to maintain an action against the Bank for the loan proceeds and the district court did not err in dismissing the case on those grounds.

Because we have determined that the district court was correct in dismissing the instant case for lack of standing, we do not reach the Partnerships' remaining arguments. Further, because we have concluded that the Partnerships were not intended beneficiaries under the loan agreements, we do not have occasion to decide whether a party deemed to be an intended beneficiary of a contract would, as the Partnerships argued, have standing to bring an action for conversion of the property from which that beneficiary is intended to benefit under the contract.

## CONCLUSION

The district court did not err in dismissing the Partnerships' operative complaint for lack of standing. The Partnerships did not show that they had a legal or equitable right, title, or interest in the loan proceeds. The judgment of the district court is therefore affirmed.

AFFIRMED.

McCORMACK, J., not participating.