## A01A1841. REDI-FLOORS, INC. v. SONENBERG COMPANY.
### (563 SE2d 505)

BLACKBURN, Chief Judge.

The Sonenberg Company, which managed certain apartment complexes, ordered carpet to be installed by Redi-Floors, Inc. As a result of the transaction, Redi-Floors did not receive full payment and sued both Sonenberg and the apartment complex owner. The trial court granted Sonenberg a directed verdict on motion, and following the trial the jury found against the owner, resulting in a judgment against the owner. Redi-Floors has now appealed the directed verdict in favor of Sonenberg. For the reasons set forth below, the trial court erred in entering a directed verdict in favor of Sonenberg, and this case must be remanded to the trial court so that Redi-Floors may be allowed to make an election as to which defendant it wishes to proceed against.

On appeal of a directed verdict against a plaintiff, we construe the evidence most favorably to the plaintiff in assessing whether any evidence could have supported a verdict in favor of the plaintiff. *Nunley v. Nunley.*[1] So construed, the evidence showed that Sonenberg managed Westchester Manor Apartments through its on-site property manager, Judith. Manor Associates Limited Partnership, whose general partner is Westchester Manor, Ltd., owned the complex. The entry sign to the property did not reveal the owner's name but did disclose that Sonenberg managed the property.

Judith contacted Redi-Floors and requested a proposal for installing carpet in several of the units. In preparing the proposal, Redi-Floors confirmed that Sonenberg was the managing company and that Judith was its on-site property manager. Judith and her assistant orally ordered the carpet as per the proposal, and Redi-Floors installed the carpet accordingly. Redi-Floors sent invoices to the complex and received checks from "Westchester Manor Apartments." Believing Sonenberg owned the complex, Redi-Floors did not learn of the true owner's identity until a dispute arose (after the work was complete) concerning the payment of some of its later invoices.

To recover on the outstanding invoices, Redi-Floors sued Sonenberg, Manor Associates Limited Partnership, and Westchester Manor, Ltd. At trial Sonenberg admitted that it had no evidence that it informed Redi-Floors of the owner's identity. Nevertheless, the court directed a verdict in Sonenberg's favor on the ground that evidence showed that Redi-Floors was aware that Sonenberg was only acting as agent. The case then continued, resulting in a verdict

---

[1] *Nunley v. Nunley*, 248 Ga. App. 208 (546 SE2d 330) (2001).

exceeding $20,000 in favor of Redi-Floors and against the owner and its general partner. Judgment was entered accordingly. Redi-Floors appeals, contending that the directed verdict was error.

1. An agent who makes a contract without identifying his principal becomes personally liable on the contract. *Wojcik v. Lewis*;[2] see *Chambliss v. Hall*;[3] see generally OCGA § 10-6-54. If the agent wishes to avoid personal liability, "the duty is on him to disclose his agency, and not on the party with whom he deals to discover it." (Punctuation omitted.) *Wojcik*, supra, 204 Ga. App. at 304 (2), quoting *Whitlock v. PKW Supply Co.*;[4] accord *Brown-Wright Hotel Supply Corp. v. Bagen*.[5] The agent's disclosure of a trade name and the plaintiff's awareness of that name are not necessarily sufficient so as to protect the agent from liability. *Wojcik*, supra, 204 Ga. App. at 304 (2); *Crolley v. Haygood Contracting*.[6] "The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal." (Citations and punctuation omitted.) *Hunter Turnkey, Inc. v. Pilot Property Co.*[7] This is generally a question for the jury. *Whitlock*, supra, 154 Ga. App. at 574 (1); *Bagen*, supra, 112 Ga. App. at 303; see generally OCGA § 10-6-87.

Based on these principles, *Reed v. Burns Intl. Security Svc.*[8] upheld a judgment in favor of a security company and against the apartment management company that contracted for security services at the apartment complex but failed to identify to the security company the name of the limited partnership owning the complex. *Hunter Turnkey, Inc.*, supra, 210 Ga. App. at 366, even reversed a bench trial judgment that had ruled in favor of the apartment complex management company where no evidence showed that the management company had disclosed the name of the principal/owner to the contracting plaintiff. Here, at least some evidence showed that Sonenberg never disclosed the name of Manor Associates Limited Partnership to Redi-Floors. Accordingly, the trial court erred in entering a directed verdict in favor of Sonenberg.

2. Contrary to the dissent, this error by the trial court is not harmless, and it requires us to remand this case to enable Redi-Floors to elect which defendant it wishes to pursue. Georgia case law makes clear that Redi-Floor's obtaining of a judgment against Manor

[2] *Wojcik v. Lewis*, 204 Ga. App. 301, 304 (2) (419 SE2d 135) (1992).

[3] *Chambliss v. Hall*, 113 Ga. App. 96, 99 (2) (147 SE2d 334) (1966).

[4] *Whitlock v. PKW Supply Co.*, 154 Ga. App. 573, 574 (1) (269 SE2d 36) (1980).

[5] *Brown-Wright Hotel Supply Corp. v. Bagen*, 112 Ga. App. 300, 302 (145 SE2d 294) (1965).

[6] *Crolley v. Haygood Contracting*, 201 Ga. App. 700, 702 (3) (411 SE2d 907) (1991).

[7] *Hunter Turnkey, Inc. v. Pilot Property Co.*, 210 Ga. App. 365, 366 (436 SE2d 84) (1993).

[8] *Reed v. Burns Intl. Security Svc.*, 215 Ga. App. 60 (449 SE2d 888) (1994).

Associates, after the trial court removed Sonenberg as a party against which Redi-Floor could elect to secure a judgment, did not constitute an election on Redi-Floor's part. In *Spalding Ford Lincoln-Mercury v. Turner Broadcasting Systems*,[9] a broadcasting company sued an automobile dealership and its advertising agency. The automobile dealership filed a motion for directed verdict, which the trial court denied.

On appeal, the dealership contended that the trial court had erred in denying the motion for directed verdict, arguing that because the broadcaster had obtained a default judgment against the advertising agency, it had made an election to proceed against the advertising agency, as agent, and was thus barred from pursuing the dealership. This Court held that: "Merely obtaining a default judgment against one party does not constitute an election. In sum, there is simply no evidence to support [the dealership's] contention that [the broadcaster] elected to proceed exclusively against [the advertising agent]." *Spalding Ford*, supra, 202 Ga. App. at 507 (2). In this case Redi-Floors proceeded against both Manor Associates and Sonenberg and made no election.

With respect to an undisclosed principal, the rule in Georgia is that if the buyer "is in fact merely an agent and acts with the authority of an undisclosed principal, either he or such principal may be held liable at the election of the opposite party; but the contractual liability of such agent and principal is not joint, and, after an election to proceed against one, the other cannot be held. [Cits.]" *Willingham, Wright &c. v. Glover*."[10] Thus,

[i]f an agent buy[s] in his own name, without disclosing his principal, and the seller subsequently discover[s] that the purchase was, in fact, made for another, he may, *at his choice*, look for payment either to the agent or the principal. . . . On the other hand, if, at the time of the sale, the seller knows not only the person, who is nominally dealing with him, is not principal, but agent, and also knows who the principal really is, and notwithstanding all the knowledge, *chooses* to make the agent his debtor — dealing with him and him alone — the seller must be taken to have abandoned his recourse against the principal, and cannot afterwards, upon the failure of the agent, turn round and charge the principal, *having once made his election at the time when he had the power of choosing between the one and the other*.

---

[9] *Spalding Ford Lincoln-Mercury v. Turner Broadcasting Systems*, 202 Ga. App. 505, 507 (2) (415 SE2d 26) (1992).
[10] *Willingham, Wright &c. v. Glover*, 28 Ga. App. 394, 396 (3) (111 SE 206) (1922).

> An election *deliberately made*, with knowledge of facts and absence of fraud, is conclusive; and the *party who has once elected*, can claim no right *to make a second choice.*

(Citations omitted; emphasis supplied.) *Wylly v. S. Z. Collins & Co.*[11] Thus, while it is true that a judgment against both the agent and the principal cannot stand, it is the plaintiff who is entitled to elect against which of the defendants, principal or agent, to take the judgment. The erroneous direction of a verdict to one of the defendants does not constitute an election by the plaintiff. A different result would obtain, had the direction of the verdict been proper. See also *Watson v. Sierra Contracting Corp.*[12] ("[a]ppellant, having failed to disclose the identity of her principal throughout the transaction, may be liable instead of the principal *at the election of the party vested with the cause of action*") (emphasis supplied). Here, Manor Associates became the sole remaining defendant by operation of law rather than the election of the plaintiff.

In *Crolley*, supra, 201 Ga. App. at 700, partial summary judgment was erroneously entered against both the principal and the agent. This Court agreed that the entry of judgment against both the agent and the principal was impermissible. Therefore, this Court "vacate[d] the judgment with direction that the trial court enter partial summary judgment against one of the appellants *at the election of appellee.*" (Emphasis supplied.) Id. at 703. This Court has held that it is the plaintiff who must elect which defendant is to be dismissed and against which defendant the judgment would be entered. In the present case the trial court's erroneous granting of a directed verdict deprived the plaintiff of its right to elect which defendant it would proceed against. This Court should vacate the judgment and remand the case to the trial court where Redi-Floors must make an election as to which defendant it will proceed against. Redi-Floors can obtain a judgment against only one of the defendants. If it elects to proceed against Sonenberg, a new trial will be necessary, but not if it elects to enforce its judgment against Manor Associates.

The dissent here, in expressing its desire to overrule *Campbell v. Alford*,[13] distinguishes between cases involving alternative liability and cases involving joint liability and points out that OCGA § 9-2-4, which allows a plaintiff to "pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them," does not apply to allow judgments against both the principal and the agent. The dissent recites the Georgia rule which is based on the tenet that the lia-

---

[11] *Wylly v. S. Z. Collins & Co.*, 9 Ga. 223, 240 (1851).
[12] *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 26 (485 SE2d 563) (1997).
[13] *Campbell v. Alford*, 155 Ga. App. 689 (272 SE2d 553) (1980).

bility of principal and agent is not joint, that an election to proceed to judgment against one bars action against the other, regardless of whether the judgment is ever satisfied. This is a much criticized rule.

A significant number of other jurisdictions and commentaries, including the Reporter of the Restatement (Second) of Agency, find these distinctions illogical and the rule itself harsh and inherently inconsistent. Many jurisdictions either have fashioned remedies which ameliorate the often harsh results of the rule or have urged complete abandonment of the rule in favor of a "satisfaction rule" imposing joint and several liability on both principal and agent.

The *Crolley* rationale was applied by the Texas appeals court in *Med. Personnel Pool of Dallas v. Seale*.[14] In that appeal, on a motion for reconsideration, the agent argued that the appeals court had erred in allowing the plaintiff to elect to proceed against her because the plaintiff had already made an election by accepting judgment against the principal. The appeals court disagreed:

> Although plaintiff sought judgment jointly and severally against both defendants, which we determined in our former opinion it was not entitled to have, the trial court refused to require plaintiff to make an election. Instead, the trial court in effect made the election by granting [the agent's] motion for judgment n.o.v. and granting plaintiff judgment only against [the principal]. An election by a party contemplates a freedom by that party to choose which defendant against whom it desires judgment. We hold, therefore, that plaintiff made no election in the trial court by accepting judgment against [the principal] when it was denied judgment against [the agent].

Id. at 215.

In *Ore Steamship Corp. v. D/S A/S Hassel*,[15] the court, considering the "elusive agency doctrine of election," wrote: "This harsh doctrine, resting at most on a rather barren logic, appears to be giving way to the more equitable view that, in the absence of some estoppel, there is no election until a judgment is actually satisfied." Writing in dissent in *Johnson & Higgins v. Charles F. Garrigues Co.*,[16] Judge Hand said, "[T]he doctrine of election ought only to apply to a case where there has been both judgment and satisfaction, and . . . anything less than a complete satisfaction or an estoppel in pais affords no logical basis for barring a remedy against both agent and undisclosed principal."

---

[14] *Med. Personnel Pool of Dallas v. Seale*, 554 SW2d 211 (Tex. App. 1977).
[15] *Ore Steamship Corp. v. D/S A/S Hassel*, 137 F2d 326, 330 (2nd Cir. 1943).
[16] *Johnson & Higgins v. Charles F. Garrigues Co.*, 30 F2d 251, 254 (2nd Cir. 1929).

Some courts make it the responsibility of the defendants to demand by motion or other appropriate pleading that the plaintiff make an election; if the defendants fail to demand or move for that remedy, the duty of the plaintiff to elect is waived and the liability is joint and several. The reasoning for this requirement was set forth in *Klinger v. Modesto Fruit Co.*[17] wherein the court explained:

It is illogical and unjust to require a creditor on his own initiative and without a demand or motion to make an election as to whether he will seek to hold an agent or his principal liable upon an obligation. This would require him to speculate upon the decision of the court regarding the relationship of the principal and agent. An election before the rendition of judgment might not accord with the court's view of the relationship as disclosed by the evidence. A premature choice might result in an erroneous selection and a total loss of a valid claim. Conflicting evidence regarding the liability of the agent or his principal would require the affirmance of a judgment at variance with the election. The uncertainty and injustice of an erroneous election [are] apparent. The law will not require a litigant to gamble on his remedy. It would seem to be a wiser and better rule of procedure, where there is an issue or a doubt as to the relationship of a principal and agent, to require a motion for election to be made, and even then to hold the motion under advisement until the liability and relationship of the respective parties [have] been determined; and then render judgment accordingly. If both are found to be liable because of the relationship of agent and undisclosed principal, then the court should direct an election to be made and enter judgment accordingly. If the demand for an election is not raised by demurrer or motion during the process of the trial by the party for whose benefit this doctrine is intended, it should be deemed to have been waived.

Id. at 129-130.

The Alabama Court of Civil Appeals has also placed the responsibility to demand an election on defendants. In *Davis v. Childers*,[18] the court stated:

After agency is established, either by admission or by the evidence, plaintiff may be required prior to judgment to elect whether to hold liable the agent or the principal. Though the

---

[17] *Klinger v. Modesto Fruit Co.*, 290 P. 127 (Cal. App. 1930).
[18] *Davis v. Childers*, 381 S2d 200, 202 (Ala. App. 1979).

right of election belongs to the plaintiff, it operates in favor of the defendants. It therefore should be their responsibility to demand it by motion or some appropriate pleading. We hold that if such demand to elect is not made and plaintiff does not of his own accord elect before entry of judgment, it may be considered waived, though we do not say it would come too late if presented by timely motion for new trial.

Id. The court held that because the defendant had not moved for an election, he had waived the requirement of an election of judgment by the plaintiff, but that the joint judgment would support only one recovery. Id. Other courts have also imposed joint liability where the defendant failed to demand an election, allowing, of course, only one recovery. See, e.g., *Amortibanc Investment Co. v. Rampart Associated Mgmt.*;[19] *Thate v. Texas &c. R. Co.*;[20] *Hoyt v. Horst.*[21]

Other courts have adopted a "satisfaction rule." Among these courts is the Maryland Court of Appeals, which set forth its reasons for abandoning the Georgia rule in *Grinder v. Bryans Road Bldg. &c. Co.*[22] The *Grinder* court points out that the rule, i.e., that the liabilities of an undisclosed principal and an agent are alternative rather than joint and thus require a third party to make an election as to which to hold liable, was adopted as § 210, Restatement (Second) of Agency, apparently for the sole reason that it has been the rule followed by most courts. But those who adopted the majority rule found it inconsistent and actually favored the minority rule. Professor Seavey, the Restatement Reporter, wrote:

> The majority of cases is in accordance with the rule as stated in this Section. The minority view is that a judgment against the agent, although with knowledge of the principal's identity, should not discharge the principal from liability. The Reporter, his Advis[o]rs, and some members of the Council, believe that the minority is correct, and should be recognized as law because more consistent, more just and more desirable from a business standpoint, if the state of the authorities permits. The undisclosed principal is made liable originally upon the transaction, because he initiated it; because he profits by it; because it is his business, conducted under his control. Policy requiring that he be liable, he should be discharged only if the debt is paid. . . . The Amer-

---

[19] *Amortibanc Investment Co. v. Rampart Associated Mgmt.*, 6 Kan. App.2d 227, 232 (627 P2d 389) (1981).

[20] *Thate v. Texas &c. R. Co.*, 595 SW2d 591, 599 (Tex. App. 1980).

[21] *Hoyt v. Horst*, 105 N.H. 380, 387-389 (201 A2d 118) (1964).

[22] *Grinder v. Bryans Road Bldg. &c. Co.*, 290 Md. 687 (432 A2d 453) (App. 1981).

ican courts almost universally hold that getting a judgment against the agent before knowledge of the principal does not destroy the liability of the principal. From this it clearly appears that the third person has two distinct causes of action, both arising from the failure to perform the obligations of the contract. In other similar situations, as in the case of tort feasors, or persons severally liable upon a contract, judgment against one has no effect. Many of the American courts, however, have expressed a theory of "election" in the undisclosed principal cases, holding that if the other party elects, with knowledge of the facts, to hold the agent, he cannot afterwards hold the principal. This is contradictory to the idea that there are two distinct causes of action, unless it is assumed that the two causes of action are mutually inconsistent. The two causes of action are not inconsistent, since the agent is liable because he made the contract, while the principal is liable because he caused it to be made.

*Grinder*, supra, 290 Md. at 699-701, quoting Temporary Draft No. 4 of March 29, to § 435 of the Restatement of Agency. "[T]he above inconsistency and treatment appear[ ] to have no real basis. In fact, the authors of the Restatement recognized the inconsistency and state that the rule regarding undisclosed principals 'appears to be inconsistent with the basic reason underlying the liability of the undisclosed principal.' [Cit.]" *Dimension Graphics v. Liebowitz & Jacobson.*[23]

Another vocal critic of the majority rule was Merton Ferson, Dean Emeritus of the University of Connecticut College of Law. We quote his forceful reasoning, as did the *Grinder* court, at some length:

[T]he third party can hold an undisclosed principal; he can also hold the agent; and, yet, he is entitled to only one performance. What is the theory of the situation? It seems clear that when the agent of an undisclosed principal makes a contractual promise to a third person the result is not *one* obligation. It is *two* obligations. The agent is bound because he makes a contract that in terms is binding on him. The principal is bound owing to a different set of facts, *viz.* he assented — *i.e.*, offered to be bound if and when the agent should make such a contract. The condition is met when the agent makes his contract. The principal and agent each consented to assume, and thus created, his own obligation. The

---

[23] *Dimension Graphics v. Liebowitz & Jacobson*, 26 Kan. App.2d 722, 725 (994 P2d 658) (1999).

obligations are not of identical origin, and they bind different obligors even though each obligation would be broken or satisfied according to whether the obligee gets what is coming to him. . . . It should not be necessary to argue at this late date that a principal and his agent are not identical. But it was approved learning in earlier days. . . . Out of the false assumption that only one obligation was created by the agent's contract, has come a century of confusion and disagreement with regard to the liabilities of principal and agent. When it is recognized that the third person acquires several rights against the principal and agent, there does not seem to be any reason of logic, justice or expediency why he should not have every advantage that accrues to any one else who has more than one right. Specifically his attempt to hold one obligor should not exonerate another obligor. And a merger of his claim against one into a judgment against that one should not take away his right against the other obligor. The several rights of a third person who has contracted with the agent of an undisclosed principal are comparable to the several rights acquired by a "creditor-beneficiary" for whom a contract has been made. In that kind of a case, *A* promises *B* that *A* will pay *B*'s debt to *C*. The result is that *C* gets a right against *A*, and, of course, retains his right against *B*. In that situation, it is settled law that *C* can recover against either *A* or *B*. *C*'s attempt to hold one does not exonerate the other and *C*'s procurement of a judgment against one does not exonerate the other. *C* is, of course, entitled to only one payment of what is coming to him and insofar as he has been paid by one obligor it reduces the extent, but does not cut off the existence, of his claim against the other.

*Grinder*, supra, 290 Md. at 704-706, quoting Merton Ferson, Undisclosed Principals, 22 U. Cin. L. Rev. 131, 142-144 (1953).

The *Grinder* court attempted to find some logical justification for the majority rule. As set forth above, it could find no basis for the rule in merger analysis since the recognition, that a recovery of judgment against an agent before knowledge of the identity of the principal does not discharge the principal, is inconsistent with the concept that there is only one cause of action which merges into the judgment first obtained. Id. at 458. Nor could the rule be justified based on avoidance of vexatious litigation. The court reasoned that "prevention of vexatious double litigation against the principal as an explanation for the election rule is greatly undercut by modern practice. If the agent is sued first, he may implead the principal as a third party defendant on the indemnification claim. If the parties are sued

jointly, the agent may cross-claim for indemnity." Id. at 459. Finally, the *Grinder* court found the "one contract-no windfall" rationale inadequate. According to that rationale, a plaintiff has only contracted for one cause of action and he would receive a windfall if allowed causes of action against both the principal and the agent. But, the court objected, a plaintiff does have two distinct causes of action.

> The principal is liable because the contract was for his benefit, and the agent is benefited by his being presumedly the creditor, for there can be but one satisfaction. But it does not follow that the agent can afterwards discharge himself by putting the creditor to his election. Being already liable by his contract, he can be discharged only by satisfaction of it, by himself or another. So the principal has no right to compel the creditor to elect his action, or to discharge either himself or his agent, but can defend his agent only by making satisfaction for him.

Id. at 458 (quoting *Beymer v. Bonsall*).[24]

The *Grinder* court recognized that "[t]he commentators appear to be nearly unanimous in their support of the minority, *i.e.*, satisfaction, rule." Id. at 703 (see the list of authorities supporting the "satisfaction rule" cited at 703-704). In light of these considerations, the court concluded that the rule was unsound and "creat[ed] more unjust results and generat[ed] more mischief than would a change in the law to a rule that looks to one satisfaction." Id. at 707. Accordingly, the court held "that a creditor who contracts with the agent for an undisclosed principal does not obtain alternative liability, that he may proceed to judgment against both, but that he is limited to one satisfaction." Id. at 707-708.

Other courts have also abandoned the majority rule in favor of a "satisfaction rule" imposing joint and several liability on the principal and the agent. In *Engelstad v. Cargill, Inc.*,[25] the Supreme Court of Minnesota, in adopting the "satisfaction rule," stated:

> We see no reasonable basis for a rule that discharges an otherwise liable principal merely because a judgment has been docketed against the principal's agent. Election requires knowledge of the defendant's assets which may not be available to the creditor at the pre-trial stage. Similarly, interlocutory judgments against the agent through default or sum-

---

[24] *Beymer v. Bonsall*, 79 Pa. 298 (1875).
[25] *Engelstad v. Cargill, Inc.*, 336 NW2d 284, 286 (Minn. 1983).

mary judgment can work an inequitable result if the creditor is left holding one uncollectible judgment while the principal is exonerated. The better rule of law, which we hereby adopt, is that a creditor may proceed to judgment against both a principal and its agent but is limited to satisfaction of one of the two judgments.

(Citation omitted.) Id. at 286; see also *Crown Controls v. Smiley*;[26] *Illinois Controls v. Langham*;[27] *Joseph Melnick Bldg. &c. Assn. v. Melnick*.[28]

However, as the Georgia law is clearly established, it can only be changed by the legislature or the Supreme Court of Georgia. We encourage consideration of such a change.

This case must be remanded to the trial court with instructions to allow Redi-Floors to make an election as to which defendant it wishes to proceed against, thus restoring to Redi-Floors the right to make such election. Should Redi-Floors elect to hold Manor Associates liable, nothing further is required as the existing judgment would stand against this defendant. On the other hand, should Redi-Floors seek to proceed against Sonenberg, the existing judgment is vacated and a new trial will be necessary.

*Judgment reversed and case remanded. Pope, P. J., Johnson, P. J., Smith, P. J., Ruffin, Eldridge, Barnes, Ellington, Phipps and Mikell, JJ., concur. Andrews, P. J., and Miller, J., concur in part and dissent in part.*

MILLER, Judge, concurring in part and dissenting in part.

I concur with Division 1 of the majority opinion that the court clearly erred in directing a verdict in favor of the Sonenberg Company. I dissent, however, as to Division 2, because I believe that Redi-Floor's decision to obtain a judgment against Manor Associates Limited Partnership has rendered the error harmless. Redi-Floors had the right, as do all plaintiffs, to pursue mutually exclusive remedies prior to the verdict; but once Redi-Floors *procured a judgment order which was reduced to writing* against Manor Associates, that constituted an election of alternative remedies that precluded plaintiff from pursuing the excluded remedy against Sonenberg.

A corollary to the principle that a nondisclosing agent is personally liable is that "[t]he contract liability of a principal and his agent is not joint, and after election to proceed against one, the other can-

---

[26] *Crown Controls v. Smiley*, 110 Wn.2d 695 (756 P2d 717) (1988).
[27] *Illinois Controls v. Langham*, 70 Ohio St.3d 512 (639 NE2d 771) (1994).
[28] *Joseph Melnick Bldg. &c. Assn. v. Melnick*, 361 Pa. 328, 335-337 (64 A2d 773) (1949).

not be held."[29] As the plaintiff may not obtain judgment against both, he must make an election *prior to judgment* as to whether he wants a judgment against the agent or against the principal.[30] If the plaintiff does not expressly announce an election, his taking a judgment against the principal constitutes an election and precludes any further action against the agent.[31] Here, after the court entered a directed verdict in favor of Sonenberg, Redi-Floors (1) had every opportunity to reevaluate its case and to obtain court permission to dismiss its case without prejudice against Manor Associates instead of proceeding further or (2) could have had the court withhold entry of judgment (once the verdict against Manor Associates was obtained) until an appeal of the directed verdict was decided. In either case, Redi-Floors could have then brought this issue here as an appeal from the directed verdict *without* electing to obtain a *judgment* against Manor Associates. Redi-Floor's decision to obtain a judgment against the principal, however, was an election and precludes it from pursuing Sonenberg further.

This does not denigrate or diminish the right of Sonenberg or of any plaintiff to pursue alternative theories or to elect between mutually exclusive remedies, whether against multiple defendants or one defendant. Rather, it simply enforces the time-honored principle under Georgia law that the election — at least as to alternative actions in the principal/agent area of law — must take place prior to judgment being entered against either.

In this regard, I note that *Campbell v. Alford*[32] indicated that an election is not made until the plaintiff obtains a satisfaction of his judgment against the principal. *Campbell* relied on two authorities: (1) OCGA § 9-2-4, which allows a plaintiff to pursue any number of consistent or inconsistent remedies against the same person or different persons until obtaining a satisfaction from some of them, and (2) *Adams v. Cox*,[33] which, citing to this statute and *Newby v. Maxwell*,[34] held that obtaining a judgment against a corporation did not preclude a plaintiff from pursuing an action against the corporation's sole shareholder to recover the same damages. *Adams*, however, *expressly distinguished* its facts from those cases where the joint contractual liability of both the principal and agent is sought (as here),

---

[29] (Citation omitted.) *Kingsberry Homes v. Findley*, 242 Ga. 362, 365 (2) (249 SE2d 51) (1978); accord *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 26 (a) (485 SE2d 563) (1997) (physical precedent only); see *Wylly v. S. Z. Collins & Co.*, 9 Ga. 223, 239 (2) (1851); *Brown-Wright Hotel Supply Corp. v. Bagen*, 112 Ga. App. 300, 302 (145 SE2d 294) (1965).

[30] *Crolley v. Haygood Contracting*, 201 Ga. App. 700, 703 (3) (411 SE2d 907) (1991).

[31] *Watson*, supra, 226 Ga. App. at 26 (a).

[32] 155 Ga. App. 689-690 (1) (272 SE2d 553) (1980).

[33] 152 Ga. App. 376, 377-378 (1) (262 SE2d 634) (1979).

[34] 121 Ga. App. 18, 19 (2) (172 SE2d 458) (1970).

for in such circumstances binding authority is clear that a monetary judgment may not be obtained against both parties.[35] Thus, the very authority relied on in *Campbell* acknowledges that OCGA § 9-2-4 does not apply to allow judgments against both the principal and the agent. As more recent controlling authority confirms that a plaintiff may obtain a judgment against either the principal or agent but not both,[36] Redi-Floor's obtaining the judgment against the principal here constituted a binding election, whether or not the judgment is ever satisfied.[37] Accordingly, I would overrule Division 1 of *Campbell*.[38]

The majority suggests that *Spalding Ford Lincoln-Mercury v. Turner Broadcasting Systems*[39] stands for the proposition that obtaining a judgment against an agent does not necessarily constitute an election to proceed against the agent instead of against the principal. I respectfully disagree. *Spalding Ford* did not involve the circumstance of electing between alternative remedies as we have here today, but rather involved a written contract in which the principal and agent expressly agreed to joint and several liability. Thus, OCGA § 9-2-4 would apply in *Spalding Ford* so as to allow the pursuit of both parties until the judgment was satisfied.[40]

For these reasons, I respectfully dissent as to Division 2 of the majority opinion.

I am authorized to state that Presiding Judge Andrews joins in this opinion.

DECIDED MARCH 29, 2002 — ▮▮▮▮▮▮▮▮

*Isenberg & Hewitt, Harriet C. Isenberg*, for appellant.
*Olim & Loeb, Jay E. Loeb*, for appellee.

---

[35] Supra, 152 Ga. App. at 378 (1); see *Kingsberry Homes*, supra, 242 Ga. at 364-365 (2), and cases cited therein.
[36] *Crolley*, supra, 201 Ga. App. at 703 (3).
[37] Cf. *Watson*, supra, 226 Ga. App. at 26 (a).
[38] Supra, 155 Ga. App. at 689-690 (1).
[39] 202 Ga. App. 505, 507 (2) (415 SE2d 26) (1992).
[40] See id.; cf. *Adams*, supra, 152 Ga. App. at 378 (1).