A11A1047. JONES et al. v. WHITE et al.
A11A1048, A11A1049. KHALIL v. JONES et al.; and vice versa.
A11A1050, A11A1051. BROCK v. JONES et al.; and vice versa.
(717 SE2d 322)

MILLER, Presiding Judge.

These five consolidated appeals arise out of Margaret Jones's and Margaret Jones & Associates's (collectively, "Jones") claim for unpaid consulting fees in connection with her work for a team of three developers, Steve Brock, Carl Drury, and Noel Khalil, on a project to revitalize the former Perry Homes, a public housing facility managed by the Atlanta Housing Authority ("AHA"). Jones

---

filed suit against the developers and Perry Homes Redevelopment, LLC ("PHR"), as well as Richard White, a consultant on the project, and White's associated company, The Alisias Holding Company,[1] alleging claims of breach of contract, unjust enrichment, promissory estoppel, and fraud.

Brock filed a motion for summary judgment. On October 17, 2008, the trial court entered its order granting Brock's motion on Jones's claims of breach of contract, promissory estoppel, and fraud, and it denied Brock's motion on her claim of unjust enrichment. Khalil and White subsequently filed motions for summary judgment on all claims, and Brock moved for reconsideration of the trial court's denial of summary judgment on Jones's unjust enrichment claim. On April 9, 2009, the trial court entered an order (i) granting White's motion for summary judgment as to all claims, (ii) granting Khalil's motion for summary judgment on Jones's breach of contract claim, (iii) denying Khalil's motion for summary judgment on Jones's claims of unjust enrichment, promissory estoppel, and fraud, and (iv) denying Brock's motion for reconsideration.

In Case No. A11A1047, Jones appeals the grant of summary judgment to White and Alisias on her breach of contract, unjust enrichment, and promissory estoppel claims. We reverse because genuine issues of material fact remain for the jury.

In Case No. A11A1048, Khalil cross-appeals from the trial court's denial of his motion for summary judgment on Jones's claims for unjust enrichment, promissory estoppel, and fraud. In Case No. A11A1050, Brock cross-appeals from the trial court's denial of his motion for summary judgment on Jones's unjust enrichment claim. In both cases, we agree with the trial court that genuine issues of material fact remain outstanding, and affirm.

In Case Nos. A11A1049 and A11A1051, Jones has cross-appealed from the cross-appeals filed by Khalil and Brock, respectively, seeking to challenge the trial court's grant of partial summary judgment to those defendants. We dismiss Jones's cross-appeals for lack of appellate jurisdiction because OCGA § 5-6-38 does not provide for cross-appeals to cross-appeals, and because Jones elected not to file timely direct appeals from the trial court's grant of partial summary judgment to Khalil and Brock.

### Case No. A11A1047

1. In Case No. A11A1047, Jones appeals the trial court's grant of summary judgment to White and Alisias on her claims for breach of

---

[1] The Alisias Holding Company was substituted for The Alisias Group, which was the entity originally named in the complaint.

contract, unjust enrichment, and promissory estoppel. She argues that material issues of fact preclude an award of summary judgment on these claims.[2] We agree.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Rushin v. Ussery*, 298 Ga. App. 830, 830-831 (681 SE2d 263) (2009). Our review of the grant or denial of summary judgment is de novo. Id. at 831.

So viewed, the evidence shows that the United States Department of Housing and Urban Development awarded a grant to the AHA for the purpose of redeveloping the former Perry Homes, a low income community located northwest of downtown Atlanta. In 1999, the AHA announced that it would seek requests for proposals from contractors seeking to redevelop Perry Homes.

In January 2000, Drury, a golf course developer, drove Jones, a public affairs consultant who had a relationship with the AHA, to view the site of a possible golf course development. Jones informed Drury that the site was adjacent to the proposed Perry Homes revitalization project and that AHA might be interested in including a golf course in that development. Shortly thereafter, Jones contacted White, who was also a consultant to the AHA, with the information that she had the name of a golf course developer who was interested in working on property adjacent to Perry Homes.

Jones met with Drury and White in March 2000 to discuss the Perry Homes project. A few days later, they met again, and White brought Khalil, a multi-family housing developer, to the meeting. According to Jones, her "role at that meeting was to discuss how we might put together a team of developers to do a bid for the Perry Redevelopment." Soon thereafter, Khalil contacted Brock, a single-family housing developer, about the Perry Homes project. Jones deposed that she and White agreed from the outset that they would "split the money that was paid to [them] by the three developers equally."

By April 2000, Brock, Drury, Khalil, White, and Jones agreed to move forward as a team to pursue the bid for the Perry Homes project. Jones's role on the team was

[t]o use [her] experience and knowledge of the [AHA] and its projects and goals[,] . . . [her] public relations experi-

---

[2] Jones does not challenge the trial court's grant of summary judgment to White and Alisias on her fraud claim.

ence[,] . . . [her] contacts in the community, [and her] organizational skills to help support this team in their efforts to secure the bid.

On or about August 24, 2000, PHR was formed for the purpose of submitting the bid proposal to the AHA. PHR was comprised of three members, Brock Built, LLC, Perry Golf Course Development, LLC, and Columbia Residential, LLC, the limited liability companies associated with Brock, Drury, and Khalil, respectively. The AHA awarded the bid for the revitalization of Perry Homes to PHR in January 2001.

According to Jones, by April 4, 2000, Khalil, Drury, and Brock had agreed to pay Jones and White for consulting services, but Jones acknowledged that at that time she "didn't have an agreement about how it would be calculated." White's notes from a May 2, 2000, meeting between Khalil, Drury, Brock, Jones, and White show Drury proposed that "professional service fees due to Jones and White . . . be evenly spread across all developers ([Drury], [Brock], and [Khalil]) as opposed to just [Khalil]." Also in May 2000, White drafted a proposed agreement among himself, Jones, Khalil, Brock, and Drury pursuant to which Khalil, Brock, and Drury would pay White and Jones an undefined amount per unit of each single-family, multi-family, and commercial property developed on the Perry Homes project.

According to Drury, he, Khalil, and Brock "agreed that for each of the units that [Khalil] did . . . [Jones] and [White] would get a thousand dollars apiece . . . they'd split it. That was the deal." Drury maintained that the agreement was reached "[e]arly in the process," before any contract was awarded, and that the three shook hands on the deal.

Jones deposed that discussions concerning the business relationship between herself, Drury, Brock, Khalil, and White continued through February 2001. The "end result," according to Jones, was that if the redevelopment bid was successful, Khalil, Brock, and Drury would pay Jones and White "in phases at the closings of the properties and . . . would be paid a percentage. [White and Jones] would each receive 10 percent . . . of the net developer's fee from Columbia Residential."

On February 21, 2001, Khalil sent an e-mail to his counsel requesting that he draft a side agreement pursuant to which White and Jones would each be entitled to "[a] 10 [percent] interest in [the] developer[']s fee received by Noel Khalil's LLC[.]" Khalil deposed, "I was prepared to make 20 percent of the net developer's fee available to whoever it went to."

Notwithstanding Khalil's e-mail, no side agreement was ever

executed. On November 1, 2002, a written "Fee Share Agreement" was entered into between Alisias and Columbia, pursuant to which Columbia agreed to pay Alisias an Assistance Fee equal to 20 percent of the Net Developer's Fee. The Fee Share Agreement, which acknowledged that Alisias had provided services to Columbia, and that the parties "wish[ed] to document and memorialize the various agreements heretofore made," stated that "the parties anticipate[d] that Alisias will receive from Columbia an aggregate Assistance Fee of approximately $1,148,000 if all 700 housing units" are completed. As of October 2005, $120,000 had been paid under the Fee Share Agreement.

Although they denied responsibility to pay for Jones's services, Khalil, Drury, Brock, and White indicated that Jones did compensable work on the Perry Homes project. Khalil deposed that "[he] expected that [Jones] was going to be compensated." Drury also deposed that Jones deserved to be paid for her work. Brock testified that he presumed Jones had a financial arrangement with Drury. Although he denied owing Jones money, White told Jones that she deserved to be paid. Nevertheless, Jones was not paid for any consulting work on the Perry Homes project.

(a) Jones claims that material issues of fact preclude summary judgment to White and Alisias on her breach of contract claim. We agree.

"Georgia contract law requires a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon." (Citation and punctuation omitted.) *Athens Heart Center v. Brasstown Valley Resort*, 275 Ga. App. 607, 608 (621 SE2d 565) (2005). "A contract may be enforceable even though it rests only in words as remembered by the witnesses." (Citations and punctuation omitted.) *Cline v. Lee*, 260 Ga. App. 164, 168 (1) (581 SE2d 558) (2003).

White argues that there was an absence of evidence of a contract between himself and Jones or between Alisias and Jones with regard to payment of consulting fees for the Perry Homes project. For purposes of Jones's claim against White and Alisias, however, a jury could conclude that Jones and White, either individually or on behalf of Alisias, entered into an oral agreement to split consulting fees, and that the payments Alisias received from Columbia constituted consulting fees subject to that agreement. More specifically, Jones testified that White agreed to a fee splitting arrangement, and Jones's testimony is consistent with (i) Khalil's February 21, 2001, e-mail directing his counsel to draft an agreement pursuant to which his LLC would pay 10 percent of net developer's fees to White and Jones, and (ii) the May 2000 document drafted by White, pursuant to

which fees would be paid to them jointly as "Jones and . . . White (together, a/k/a MJA/Alisias)." See *Swanson v. Hodges*, 96 Ga. App. 540, 540-542 (1) (101 SE2d 212) (1957) (unsigned proposal admissible to corroborate plaintiff's testimony as to oral contract); *Denton v. Etheridge*, 73 Ga. App. 221, 226 (2) (36 SE2d 365) (1945) (although unsigned agreement was not admissible in evidence as a written contract, it was admissible "for the purpose of corroborating the plaintiff as to what he contended the alleged oral contract to be").

> Further, in cases such as this one, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

(Citation omitted.) *Turner Broadcasting System v. McDavid*, 303 Ga. App. 593, 597 (1) (693 SE2d 873) (2010).

White argues that even if there was "some type of understanding" that Jones would be paid, it was impossible to determine exactly how and in what amount Jones should be paid. However, the mutual promise to split the consulting fees equally was specific enough to be "definitely and objectively ascertainable" so as to form the basis of a contract. *Arby's Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995); see *Kerwood v. Dinero Solutions*, 292 Ga. App. 742, 745 (666 SE2d 40) (2008) (party's testimony sufficient to create issue of fact as to whether a contract attachment represented the agreed-upon method of calculating profits). White's and Alisias's other arguments, such as characterizing White's assistance as "exclusive to Khalil," may be relevant to the ultimate trier of fact, but they do not demonstrate that the undisputed facts, when viewed in a light most favorable to Jones, as the nonmovant, warranted summary judgment on Jones's claim for breach of contract.

(b) Jones also contends that the trial court erred in granting summary judgment to White and Alisias on her claim of unjust enrichment. Again, we agree. A claim of unjust enrichment will lie if there is no legal contract and "the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." (Citation and punctuation omitted.) *Smith v. McClung*, 215 Ga. App. 786, 789 (3) (452 SE2d 229) (1994). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value

received." (Citation and punctuation omitted.) *Scott v. Mamari Corp.*, 242 Ga. App. 455, 458 (2) (530 SE2d 208) (2000).

White and Alisias claim that Jones's unjust enrichment claim cannot be sustained because Jones did not provide any product or service to White or Alisias. A trier of fact could conclude, however, that Jones's efforts benefited White and Alisias. "The word 'benefit,[ ]' . . . denotes any form of advantage." Restatement of Restitution, § 1, Unjust Enrichment, cmt. b (1937). Evidence showed that Jones did compensable consulting work in furtherance of the Perry Homes project. White's controlled company, Alisias, has received $120,000 of consulting fees for that project. See *Maloy v. Ewing*, 157 Ga. App. 95, 96 (4) (276 SE2d 145) (1981) (jury could infer that the work done by plaintiffs was of benefit to the defendant personally where defendant controlled the corporation which was a beneficiary of plaintiffs' services). In addition, even if Jones did not have a legally enforceable agreement with White, the evidence would support a finding that she acted with an expectation that she would receive payment from White should the entirety of the consulting fees be tendered by the developers to White. See *Morris v. Britt*, 275 Ga. App. 293, 294 (1) (620 SE2d 422) (2005) (unjust enrichment requires party conferring labor to act with expectation that the other is responsible for the cost). A trier of fact could conclude that White and Alisias, having received 100 percent of the consulting fees, have been compensated not only for White's consulting work, but also for the consulting work performed by Jones, and that it would be unjust for White and Alisias to retain the entirety of those fees. See generally *Cochran v. Ogletree*, 244 Ga. App. 537, 539 (1) (536 SE2d 194) (2000) ("[P]rinciple of unjust enrichment . . . gave rise to the duty for the plaintiff to pay to the defendants the value of the services and expenses incurred, because the plaintiff received some benefit.").

(c) Jones further contends that she presented sufficient evidence to preclude the grant of summary judgment on her claim of promissory estoppel. Her contention has merit.

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

OCGA § 13-3-44 (a). White argues that he made no promise to pay Jones, but, as shown by the evidence discussed in Division 1 (a), supra, a jury could conclude that White promised to split the consulting fees with Jones. A jury could also conclude that White

should have reasonably expected Jones to rely on his promise, that she did in fact rely on the promise to her detriment, and that an injustice could be avoided only by the enforcement of the promise. See *Hendon Properties v. Cinema Development*, 275 Ga. App. 434, 438-439 (2) (620 SE2d 644) (2005) (setting forth elements of promissory estoppel). Accordingly, White and Alisias were not entitled to summary judgment on Jones's promissory estoppel claim.

In view of the foregoing, we find that the trial court erred in granting summary judgment to White and Alisias on Jones's claims of breach of contract, unjust enrichment, and promissory estoppel.

## Case No. A11A1048

2. (a) In Case No. A11A1048, Khalil cross-appeals from the trial court's denial of his motion for summary judgment on Jones's claims for unjust enrichment, promissory estoppel, and fraud. Khalil argues that at all times in relation to the Perry Homes project, he was acting as a representative of and on behalf of his independent corporate entity, Columbia, and that any asserted causes of action arising out of those dealings should have been brought against Columbia rather than Khalil, individually. Khalil contends that Jones was fully aware that any acts, statements, or alleged promises related to the Perry Homes project were made by Khalil as a member of Columbia, and not in his individual capacity. He points out that the proposal that Jones helped prepare showed Columbia, and not Khalil, as the entity responsible for the multi-family component of the Perry Homes project; Khalil also points to Jones's testimony that Columbia was the entity responsible for paying the net developer's fees to Jones and White.

"Because the cardinal rule of corporate law is that a corporation possesses a legal existence separate and apart from that of its officers and shareholders, the mere operation of a corporate business does not render one personally liable for corporate acts." (Citation and punctuation omitted.) *Litland v. Smith*, 247 Ga. App. 277 (1) (543 SE2d 468) (2000). As a rule, however, "[i]f the agent wishes to avoid personal liability, the duty is on him to disclose his agency, and not on the party with whom he deals to discover it." (Citation and punctuation omitted.) *Redi-Floors v. Sonenberg Co.*, 254 Ga. App. 615, 616 (1) (563 SE2d 505) (2002); see *Reed v. Burns Intl. Security Svc.*, 215 Ga. App. 60 (449 SE2d 888) (1994) ("one who deals with an agent who fails to disclose his principal may at his election recover from either the agent or the principal") (citation and punctuation omitted). "This is generally a question for the jury." (Citation omitted.) *Redi-Floors*, supra, 254 Ga. App. at 616 (1).

Jones deposed that Khalil, as well as Brock and Drury, "talked

about themselves as individuals." Khalil likewise described Jones as a part of a team of individuals. Khalil's testimony also indicates that he dealt with Jones as Khalil, individually, and not as an agent of Columbia:

> Q: Now, when you had talked with ... White and [Jones] about their compensation, did you specifically refer to your entity or are you just talking with them as [Khalil], [Jones], and [White]?
>
> [A:] I probably was speaking in the context of [Khalil], [Jones], and [White].

We conclude that an issue of material fact remains as to whether Khalil disclosed to Jones that he was acting as an agent of Columbia.

(b) Khalil further argues that the alleged promise by Brock, Drury, and Khalil to pay Jones and White a consulting fee lacked the essential term of the amount of payment to be made and was too indefinite to be enforced. Therefore, he contends, the indefinite promise could not support Jones's claims for promissory estoppel and fraud.

Promissory estoppel "does not apply ... to vague, indefinite promises." (Footnote omitted.) *Mooney v. Mooney*, 245 Ga. App. 780, 783 (538 SE2d 864) (2000). Similarly, fraud cannot be predicated upon a promise that is too indefinite to be enforced. See *Jackson v. Ford*, 252 Ga. App. 304, 307 (1) (b) (555 SE2d 143) (2001). In light of Jones's deposition testimony and other evidence of record, however, including Khalil's e-mail of February 21, 2001, a trier of fact could conclude that Khalil promised to pay Jones 10 percent of his net developer's fee, an amount sufficiently definite to be enforced. *Hardnett v. Ogundele*, 291 Ga. App. 241, 242-243 (1) (661 SE2d 627) (2008) (promise to pay 1/3 of any settlement or recovery was enforceable); *Phillips & Co. v. Hudson*, 9 Ga. App. 779, 780-781 (72 SE 178) (1911) (promise to pay a percentage of company's net earnings was definite and enforceable). Accordingly, Khalil's argument fails.

(c) Lastly, Khalil contends that he has fully performed his portion of the oral promise alleged by Jones and that a verdict against him in any amount would be improper. Specifically, Khalil contends that he "has done everything and paid all amounts that he ever promised to pay the Consultants — 20% of Columbia Residential's net developer's fees," and that if a jury should find that Jones is entitled to 50 percent of the net developer fees, then the proper verdict would be against White or Alisias, and not Khalil. Based on the evidence, however, a trier of fact could conclude Khalil promised to pay Jones 10 percent of net developer's fees and that payment of

20 percent of the fees to White did not fulfill his promise to Jones.

In light of the foregoing, we affirm the trial court's denial of Khalil's motion for summary judgment on Jones's claims for unjust enrichment, promissory estoppel, and fraud.

### Case No. A11A1050

3. In Case No. A11A1050, Brock cross-appeals from the trial court's order denying his motion for summary judgment on Jones's unjust enrichment claim. Brock argues that he did not unjustly enrich himself at Jones's expense because Jones did not perform services for Brock and because there is an absence of evidence that Brock directly benefited from any services provided by Jones. Brock also maintains that Jones had no expectation of compensation from Brock, and that her knowledge of Brock Built's involvement with the Perry Homes project precluded her claim for unjust enrichment.

(a) "For unjust enrichment to apply, the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost." (Citation and punctuation omitted.) *Morris*, supra, 275 Ga. App. at 294 (1). In this case, Jones deposed that by April 2000 the developers, including Brock, had agreed to pay her for her services. There is at least some evidence that Jones acted with the expectation that Brock would be responsible for the cost of her services.

(b) Brock argues that because evidence showed that Jones knew about the existence of Brock's company, Brock Built, that there was no issue of fact as to whether Brock acted as an undisclosed agent. Brock shows that shortly after he met Jones in April 2000, White sent an e-mail to several parties, including Jones and Brock, in which White informed Brock that he was "hopeful that [Brock] and [Jones] are able to arrange time to spend together developing some basic fact sheets about Brock Built . . . ." Brock also argues that Jones knew that PHR submitted the bid for the Perry Homes project and points out that the proposal submitted by PHR identified Brock Built as one of its members.

As discussed in Division 2 (a), supra, it is the duty of the agent to disclose the agency, but "not on the party with whom he deals to discover it." (Punctuation omitted.) *Redi-Floors*, supra, 254 Ga. App. at 616 (1). The evidence does not demand a finding that Brock disclosed to Jones that he was acting as an agent of Brock Built. According to Jones, Brock and the other developers talked about themselves as individuals in their discussions with Jones, and Jones testified that Brock "represented himself as [her] client." The issue must be resolved by the trier of fact. Id.

(c) Brock also argues that Jones's unjust enrichment claim fails

because he did not benefit directly from any services provided by Jones. He points out that it was PHR, not Brock, that was awarded the Perry Homes project, and that Brock Built, not Brock, was a member of PHR. See *Scott*, supra, 242 Ga. App. at 458-459 (2) (concluding that a lender Bank and its assignee were not unjustly enriched since they did not "receive[ ] the direct benefit of [plaintiff's] labor" on a development project, and any indirect benefit to Bank's collateral was only the "natural by-product" of work performed). However, PHR was not formed until months after Brock, Drury, and Khalil began their efforts, with Jones's assistance, to secure the successful bid. Jones testified to her efforts on behalf of the team of developers, which included Brock. According to Drury, Brock, along with Drury and Khalil, agreed to pay Jones and White for their services "[e]arly in the process." Under the circumstances, a trier of fact could conclude that Brock received the direct benefit of services rendered by Jones. To the extent that Jones's efforts may have also inured to the benefit of Brock Built, a trier of fact would not be precluded from finding that Brock was personally benefited by Jones's services. See *Maloy*, supra, 157 Ga. App. at 96 (4).

The trial court did not err in denying Brock's motion for summary judgment on Jones's unjust enrichment claim.

### Case No. A11A1051

4. In Case No. A11A1051, Jones appeals the trial court's order entered October 17, 2008, granting summary judgment to Brock on her breach of contract, promissory estoppel, and fraud claims. Brock has moved to dismiss this appeal. We agree that we lack appellate jurisdiction.

A party may elect to appeal a grant of partial summary judgment by notice of appeal filed within 30 days of entry of the judgment. See OCGA § 9-11-56 (h); *Olympic Dev. Group v. American Druggists' Ins. Co.*, 175 Ga. App. 425 (1) (333 SE2d 622) (1985). We have previously

> held that where the appellants had failed to bring a timely appeal from a grant of partial summary judgment, they could not obtain appellate review of that ruling in an appeal from a subsequent grant of partial summary judgment, where the latter order did not constitute a final judgment in the case. . . . [A] party who chooses not to bring a direct appeal from such an order may reasonably be deemed to have made an election to wait until a final judgment has been entered in the case to challenge the ruling.

(Citations omitted.) *Hutchison v. Nat. Svcs. Indus.*, 191 Ga. App. 885,

886 (1) (383 SE2d 212) (1989). This holding is a recognized "exception to the general rule that once a case is on appeal, all rulings theretofore made by the trial court are subject to review." Id. See OCGA § 5-6-34 (d). Thus, having failed to bring a timely appeal from the October 17, 2008 order granting partial summary judgment to Brock, Jones made an election to wait until the entry of a final judgment to challenge the ruling. The subsequent April 9, 2009 order did not constitute a final judgment in the case and did not afford Jones an opportunity to seek appellate review of the October 17, 2008 order.

Jones nevertheless seeks appellate review of the October 17, 2008 order through her notice of cross-appeal to Brock's cross-appeal in Case No. A11A1050. In applicable part, OCGA § 5-6-38 (a) provides that "[i]n civil cases, the appellee may institute cross appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant[.]" The "notice of appeal" in this sentence logically refers to that which "shall be filed within 30 days after entry of the appealable decision or judgment complained of[.]" Id. OCGA § 5-6-38 (a) does not contemplate a cross-appeal to a cross-appeal.

Jones argues that because a cross-appeal to a cross-appeal is not specifically limited by statute, her cross-appeal is viable. See generally *Centennial Ins. Co. v. Sandner, Inc.*, 259 Ga. 317, 317-318 (380 SE2d 704) (1989) (allowing cross-appeal against party other than appellant); *Sanders v. Ramo*, 203 Ga. App. 43, 44 (1) (416 SE2d 333) (1992) ("the Appellate Practice Act is to be liberally construed in order to bring about a decision on the merits of every case appealed") (citation and punctuation omitted). We are unpersuaded. As indicated above, by failing to file a direct appeal of the October 17, 2008 order, Jones is deemed to have elected to wait until the entry of final judgment before challenging the entry of partial summary judgment in favor of Brock. We are not inclined to recognize a procedure which would allow an appellant to circumvent the rule recognized by *Olympic* and *Hutchison*. Jones's arguments do not establish the viability of her cross-appeal to the cross-appeal. Brock's motion to dismiss is granted.

## Case No. A11A1049

5. Case No. A11A1049 suffers from the same procedural deficiency we addressed in Case No. A11A1051, supra. Case No. A11A1049 was initiated by Jones's notice of cross-appeal of that portion of the trial court's April 9, 2009 order granting partial summary judgment to Khalil. The notice of cross-appeal, filed June 8, 2009, cannot be considered a timely direct appeal from the April 9,

2009 order. Nor did Jones challenge the grant of partial summary judgment to Khalil through her appeal in Case No. A11A1047, supra, in which Jones appealed only the grant of summary judgment to White. Accordingly, Case No. A11A1049 is what it purports to be, which is Jones's cross-appeal of Khalil's cross-appeal in Case No. A11A1048. As discussed in Division 4, supra, a cross-appeal to a cross-appeal is not a recognized procedure under OCGA § 5-6-38. Therefore, given that Jones elected not to directly appeal the partial grant of summary judgment to Khalil, her appeal in Case No. A11A1049 must be dismissed. See *Hutchison*, supra, 191 Ga. App. at 886 (1).

*Judgment reversed in Case No. A11A1047. Judgments affirmed in Case Nos. A11A1048 and A11A1050. Appeals dismissed in Case Nos. A11A1049 and A11A1051. Ellington, C. J., and Doyle, J., concur.*

## DECIDED OCTOBER 4, 2011.

*RobbinsFreed, Richard L. Robbins, Alexa R. Ross*, for Jones.
*James E. Dearing, Jr.*, for White.
*Hunter, Maclean, Exley & Dunn, Christopher W. Phillips*, for Khalil.
*Ashe, Rafuse & Hill, William B. Hill, Jr., Joseph C. Sharp*, for Brock.